**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GCB COMMUNICATIONS, INC., an
Arizona corporation, DBA Pacific
Communications; LAKE COUNTRY
COMMUNICATIONS, INC., a Minnesota
corporation,
　　　　　　　*Plaintiffs-Appellees*,

　　　　　　　v.

U.S. SOUTH COMMUNICATIONS, INC., a
Georgia corporation,
　　　　　　　*Defendant-Appellant*,

　　　　　　　and

UNIDENTIFIED COMPANIES I THROUGH
X,
　　　　　　　*Defendant*.

No. 09-17646

D.C. No.
2:07-cv-02054-
SRB

GCB COMMUNICATIONS, INC., an
Arizona corporation, DBA Pacific
Communications; LAKE COUNTRY
COMMUNICATIONS, INC., a Minnesota
corporation,
　　　　　　　*Plaintiffs-Appellees*,

　　　　　　　v.

U.S. SOUTH COMMUNICATIONS, INC., a
Georgia corporation,
　　　　　　　*Defendant-Appellant*,

　　　　　　　and

UNIDENTIFIED COMPANIES I THROUGH
X,
　　　　　　　*Defendant*.

No. 10-16086

D.C. No.
2:07-cv-02054-
SRB

OPINION

5579

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
March 15, 2011—San Francisco, California

Filed April 29, 2011

Before: J. Clifford Wallace, Ferdinand F. Fernandez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Glenn B. Manishin, Duane Morris LLP, Washington, D.C., for the appellant.

Glenn B. Hotchkiss, Cheifetz Iannitelli Marcolini, P.C., Phoenix, Arizona, for the appellees.

Albert H. Kramer, Dickstein Shapiro LLP, Washington, D.C., for the amicus, American Public Communications Council, Inc.

## OPINION

FERNANDEZ, Circuit Judge:

U.S. South Communications, Inc. (U.S. South) appeals from the judgment entered against it and in favor of GCB

Communications, Inc. and Lake Country Communications, Inc. (collectively GCB) after a bench trial. At issue is whether U.S. South was required to pay GCB for completed coinless payphone calls — dial-around calls — if U.S. South did not receive coding digits that would identify the calls as GCB payphone calls. We reverse and remand for further proceedings.

## BACKGROUND

GCB is a payphone service provider (PSP), which owns public payphones. U.S. South is an issuer of prepaid calling cards. The disputed calls in this case were placed on GCB's payphones using U.S. South's calling cards.

When a coinless call is made on a payphone, it is initially received by the local exchange carrier (LEC) serving that geographic region. The LEC then passes the call to an interexchange carrier (IXC), and the IXC then routes the call to the carrier that completes the call (the "completing carrier," which in this case is U.S. South, a switch-based reseller (SBR)). For the calls at issue in this case that were completed by U.S. South, Level Three Communications (L3) was U.S. South's IXC. Federal Communications Commission (FCC) regulations require an SBR to compensate PSPs for completed calls that were placed on their payphones.[1] Dial-around calls are coinless calls placed at a payphone where the caller does not utilize the PSP's chosen long distance provider, and for which the PSPs receive no compensation from the caller. U.S. South is the completing carrier when individuals place calls using its prepaid calling cards. A call is deemed completed when the called party answers the telephone. As calls are routed through the telephone communications network, the various carriers in the call path exchange information so that

---

[1]*See, e.g.,* In re Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996 ("2003 Payphone Order") Report and Order, 18 FCC Rcd. 19975, 19976, ¶ 1 (2003).

each carrier knows what to bill for its contribution to the completed call.

U.S. South identifies which payphones were used to place calls with its calling cards by utilizing technology called "Flex-ANI." Every payphone is assigned an Automatic Number Identification (ANI), which is essentially its phone number. Flex-ANI is software that enables the LEC to determine whether a particular call was originated from a payphone by matching the ANI of the phone from which the call is made against a database of payphone ANIs. If the ANI is identified as a payphone ANI, the LEC, using Flex-ANI, will generate a two digit code of either 27, 29, or 70 and attach that code to the payphone's ANI at the LEC's switch. The codes are not actually attached to the ANI at the payphone itself. Flex-ANI has become the standard method for determining whether a call originated from a payphone.

In order for the system to function properly, the originating LEC and each subsequent carrier must have Flex-ANI capability. IXCs, like L3, have an obligation to provide all of the call data they receive at their switches, without manipulation, to SBRs, like U.S. South, including the Flex-ANI coding digits if received. If L3 does not receive Flex-ANI digits when the call is passed to it, neither will U.S. South.

When U.S. South completes a call, the data from that call is captured at its switch. If U.S. South receives a call with Flex-ANI coding digits identifying the call as having been placed on a payphone, it will add that call to a database used to determine dial-around compensation owed to individual PSPs, like GCB. If a call does not include the identifying digits, it will be discarded as not compensable. On a quarterly basis, U.S. South forwards its compensable call data to Atlantax Systems, Inc., which it hires to process and pay the dial-around compensation it owes to each individual PSP.

At root, GCB's argument is that when U.S. South completed calls made from GCB's payphones, U.S. South owed it dial-around compensation for the calls,[2] even if the proper coding was absent or incorrect at the time U.S. South received them. Both parties make factual arguments disclaiming fault for the failure of Flex-ANI digits to appear with the disputed calls at the time U.S. South received them. Beyond that, GCB contends that the FCC regulations require completed calls to be compensated, without regard to whether the completing carrier received Flex-ANI coding, or to why it was not received. U.S. South argues that if it did not receive Flex-ANI digits, the regulations require compensation only if it can be found that the completing carrier or IXC is at fault.

The district court did not resolve that factual issue after the bench trial. Instead, the district court determined the result based on a legal conclusion: it interpreted the FCC regulations on dial-around compensation to require that once PSPs "set up (or provision) their payphone lines with Flex-ANI capability" they are owed compensation for completed calls, even if the Flex-ANI coding is not sent to or received by the completing carrier. Moreover, the district court held that because "the relevant regulations placed the burden for *accurately* tracking calls on the completing carrier (U.S. South) and not the PSP (plaintiffs)," U.S. South owes GCB dial-around compensation for the disputed calls "regardless of whether the proper Flex-ANI digits were transmitted." On that view of the law, the only factual finding necessary to resolve the case was whether GCB had properly "set up" its payphones with Flex-ANI capability. The court found that it had. U.S. South appealed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2]The parties agree that U.S. South has compensated GCB for all calls for which U.S. South received the payphone specific Flex-ANI coding digits.

In this statutory and regulatory area of the law, we review a district court's legal interpretations, which are constrained by *Chevron*,[3] de novo. *See Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009). A district court's conclusions of law following a bench trial are also reviewed de novo. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010). We review a district court's denial of a request to refer a case to an agency under the primary jurisdiction doctrine for abuse of discretion. *See Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). But if the district court has committed an error of law, that would constitute an abuse of discretion. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). We review the factual findings underlying a district court's decisions for clear error. *See JustMed*, 600 F.3d at 1125; *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009).

We review evidentiary rulings for abuse of discretion, but will not reverse those unless it is more probable than not that an error, if any, tainted the outcome. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 993-94 (9th Cir. 2010). Moreover, we review a district court's case management decisions for abuse of discretion. *See O'Neill v. United States*, 50 F.3d 677, 687-88 (9th Cir. 1995).

## DISCUSSION

U.S. South raises a number of issues besides the central issue of who bears the expense when the completing carrier does not receive the Flex-ANI coding numbers. Three of those are at the threshold: does GCB have a cognizable claim; is even considering the question here a violation of principles of deference to administrative agencies; and should the district court have applied the principle of primary jurisdiction? Others can be considered after we dispose of the central issue:

---

[3]*Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

did the district court err when it made evidentiary rulings; did it err when it made case management decisions; did it use the wrong prejudgment interest rate; and did it improperly determine the fee award?

## I. *Threshold Issues*

This group of issues revolves around U.S. South's wish that the district court had not heard the case at all. Its laments take three forms.

U.S. South first states that the district court had no power to grant relief, by which it appears to mean that GCB did not state a claim because no right of action is provided for by law. That is a most problematic position in any event,[4] but we need not address it at this time because the argument was not presented to the district court.[5] In short, the alleged defect is not one of jurisdiction[6] and U.S. South has waived it.[7] We will not consider the issue.

Next, U.S. South argues that the district court, somehow, violated the doctrine that requires deference to an interpretation of statutes or regulations by an administrative agency,

---

[4]*See* 47 U.S.C. § 201(b) (unreasonable actions by a carrier are unlawful); *id.* § 206 (carrier liable to persons injured by unlawful actions of the carrier); *id.* § 207 (a damaged person may sue in district court); 2003 Payphone Order, 18 FCC Rcd. 19975, 19990, ¶ 32 (a failure to pay pursuant to the FCC's payphone rules is "an unjust and unreasonable practice."); *Global Crossing Telecomms., Inc. v. Metrophones Telecomms.*, 550 U.S. 45, 47-48, 127 S. Ct. 1513, 1516, 167 L. Ed. 2d 422 (2007) (FCC order "is a reasonable interpretation of the statute.").

[5]In fact, U.S. South admits that it did not file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because of its own tactical considerations, that is, it thought it could expedite matters if it did not.

[6]*See Burks v. Lasker*, 441 U.S. 471, 476 n.5, 99 S. Ct. 1831, 1836 n.5, 60 L. Ed. 2d 404 (1979); *Ball v. Rodgers*, 492 F.3d 1094, 1102 n.12 (9th Cir. 2007).

[7]*See WildWest Inst. v. Bull*, 547 F.3d 1162, 1172 (9th Cir. 2008).

here the FCC. *See Nat'l Assoc. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 672, 127 S. Ct. 2518, 2537-38, 168 L. Ed. 2d 467 (2007); *Chevron*, 467 U.S. at 842-45, 104 S. Ct. at 2781-83; *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1073 (9th Cir. 2010). That principle is clear enough. However, the district court did not ignore any interpretation by the FCC; rather, it engaged in the common judicial task of construing the language of an order, which the FCC has not construed in any way antithetical to the district court's reading. Indeed, the FCC has been silent on that subject. Thus, the district court did not run afoul of *Chevron*. *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008); *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995).

Well, then, says U.S. South, if the FCC has not construed its regulation, it should do so, and the district court abused its discretion when it failed to refer the issue to the FCC pursuant to the doctrine of primary jurisdiction. But, of course, the primary jurisdiction doctrine is not jurisdictional at all in the usual sense; "it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek*, 307 F.3d at 780. It is useful, and can be used, in instances where the federal courts do have jurisdiction over an issue, but decide that a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

Here, as a general matter, we know that Congress was especially concerned about payment of full and fair compensation to payphone operators,[8] and that the FCC has issued a number of orders designed to assure that the congressional intent is

---

[8]*See* 47 U.S.C. § 276(b)(1)(A).

carried out.[9] Moreover, the FCC has declared that the failure to pay is unjust and unreasonable. 2003 Payphone Order, 18 FCC Rcd. 19975, 19990, ¶ 32. Thus, the basic compensation concept, with all of its complexity, is not before us. What is before us is the relatively easier task of construing the language of the FCC orders. While, as we will explain, we do not agree with the district court's construction of the order in question, based upon what that court had before it when it was asked to refer the issue to the FCC, we are unable to hold that it abused its discretion. *See United States v. W. Serum Co., Inc.*, 666 F.2d 335, 338 (9th Cir. 1982); *see also Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1251-52 (9th Cir. 2009). Especially is that true where, as here, U.S. South waited until shortly before trial to raise the issue at all. *Cf. CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 253 (3d Cir. 2007) (where primary jurisdiction issue not raised until after trial, it was waived); *United States v. Campbell*, 42 F.3d 1199, 1202 (9th Cir. 1994) (same).

Having disposed of those preliminary issues, we can now address the central issue in this case.

II.  *Payphone Operator Compensation*

**[1]** As already noted, Congress wanted to ensure that PSPs receive compensation when calls are completed using their payphones; it directed the FCC to establish a plan to accomplish that. *See* 47 U.S.C. § 276(b)(1)(A). To effectuate that directive, the FCC promulgated regulations which require completing carriers to compensate PSPs on a per-call basis for calls made on their payphones. *See* 47 C.F.R. § 64.1300. The

---

[9]*See, e.g.*, *In re Request to Update Default Compensation Rate for Dial-Around Calls from Payphones*, Report and Order, 19 FCC Rcd. 15636, 15661, ¶ 79 (2004); 2003 Payphone Order, 18 FCC Rcd. 19975, 19990, ¶ 32; *In re Implementation of the Pay Telephone Reclassification and Compensation Provisions in the Telecommunications Act of 1996*, Second Report and Order, 13 FCC Rcd. 1778, 1805-06, ¶ 59-60 (1997).

regulations also require completing carriers to "establish a call tracking system that accurately tracks coinless" payphone calls.[10] 47 C.F.R. § 64.1310(a)(1). Completing carriers must undergo audits of their tracking systems to ensure that PSPs are being properly compensated. 47 C.F.R. § 64.1320(a). To assist IXCs and completing carriers in tracking payphone calls, the FCC required LECs to implement Flex-ANI technology at their switches.[11]

The dispute in this case is over dial-around calls placed at GCB's payphones, but for which the Flex-ANI digits were not received by U.S. South. While the parties argue over who erred regarding those digits, the district court saw no need to resolve that question because, in its opinion, it did not matter as long as GCB had made a provision for transmitting the Flex-ANI number, even if the number was not transmitted. We do not agree that the FCC's requirements can be read in that way.

[2] The FCC imposed a requirement that:

> LECs transmit payphone-specific coding digits to PSPs, and that PSPs transmit those digits from their payphones to IXCs. The provision of payphone-specific coding digits is a prerequisite to payphone per call compensation payments by IXCs to PSPs for subscriber 800 and access code calls.

1998 Payphone Order, 13 FCC Rcd. 4998, 5006, ¶ 13 (footnote reference omitted); *see also In re Implementation of the*

---

[10]Completing carriers need not use Flex-ANI technology; they may use the technology of their choice to meet their tracking obligations. *See* 2003 Payphone Order, 18 FCC Rcd. 19975, 19994, ¶ 39.

[11]*In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996* ("1998 Payphone Order"), Memorandum Opinion and Order, 13 FCC Rcd. 4998, 5050, ¶ 99 (1998); *see also id.* at 5006, ¶ 13.

*Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, Order on Reconsideration, 11 FCC Rcd. 21233, 21265-66, ¶ 64 (1996) (stating that: "payphones will be required to transmit specific payphone coding digits" and "[e]ach payphone must transmit coding digits."). In discussing a waiver, which was being provided by the order, the FCC went on to explain: "This limited waiver applies to the requirement that LECs provide payphone-specific coding digits to PSPs, and that PSPs provide coding digits from their payphones before they can receive per-call compensation from IXCs for subscriber 800 and access code calls." 1998 Payphone Order, 13 FCC Rcd. 4998, 5007, ¶ 14.

**[3]** The district court essentially interpreted these provisions to mean that PSPs need only provide for transmission of the Flex-ANI digits, even if the digits were never transmitted into the system. As we see it, that is not a proper reading of the plain language[12] of the order; when one is obligated to transmit something or provide something to another, it is contrary to ordinary usage to say that one need only make provision to do so, even if one does not provide or transmit at all. A natural reading[13] of the words in question leads to a conclusion that the Flex-ANI digits must, indeed, be transmitted in the first place. As dictionary definitions show,[14] that accords with the usual active meaning of the words "transmit"[15] and

---

[12]When the text of a statute or regulation is read, we look to its plain meaning. *See United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004) (regulations); *Eisinger v. FLRA*, 218 F.3d 1097, 1102 (9th Cir. 2000) (statutes).

[13]*See Carcieri v. Salazar*, ___ U.S. ___, ___, 129 S. Ct. 1058, 1064-65, ___ L. Ed. 2d ___ (2009); *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 406, 119 S. Ct. 1402, 1407, 143 L. Ed. 2d 576 (1999).

[14]*See Gollehon v. Mahoney*, 626 F.3d 1019, 1023 (9th Cir. 2010).

[15]*See, e.g.*, Webster's Third New International Dictionary 2429 (1986) (transmit means "to cause to go or be conveyed to another person or place"; The Oxford English Dictionary 414 (2d ed. 1989) (transmit means "[t]o cause (a thing) to pass, go, or be conveyed to another person, place, or thing; to send across an intervening space; to convey, transfer.").

"provide."[16] That reading also makes sense because the whole purpose of the Flex-ANI system was to implement a practical way for completing carriers to determine that a call was from a PSP. That, in the long run, facilitates the prompt payment of amounts owed to all PSPs.[17]

We are mindful of the fact that in the way the industry developed, the Flex-ANI codes are not directly transmitted by the payphones themselves — those phones are not set up to do so. Thus, rather than an LEC transmitting the code digits to the PSP, which then transmits them from the payphones to the IXCs, the PSP will purchase the appropriate lines from the LEC. When a call comes from the payphone, the LEC will attach the digits to that call and then forward it into the system. As we see it, that makes no real difference: whether an LEC transmits the Flex-ANI digits to the payphone, which then transmits them — necessarily back through the LEC — into the system, or whether that circular route is avoided and the LEC adds the Flex-ANI digits when the call comes to it from the payphone, the result is necessarily the same. By the time the call leaves the LEC and enters the system, the Flex-ANI digits will be attached — or should be. And, for good or ill, the FCC has made it clear that it is the duty of the PSP — vis-à-vis the completing carrier — to make sure that happens.

**[4]** We have no reason to believe that the FCC did not understand the industry and its practices when it adopted the 1998 Payphone Order, but it, nevertheless, made it quite clear that the ultimate transmission obligation is upon the PSP, rather than upon the completing carrier. That cannot be dis-

---

[16]*See, e.g.*, Webster's Third New International Dictionary 1827 (1986) (provide means to equip, to afford, to yield, and synonyms are supply and furnish); The Oxford English Dictionary 713 (2d ed. 1989) (provide means to "[t]o supply or furnish for use; to yield, afford.").

[17]We recognize that "provide" can be used in the sense of prepare, as in "I have provided for my retirement." Here, however, it is coupled with to transmit, which underscores a "provide to" reading.

charged by making a provision to transmit; transmission itself is required.[18] Nevertheless, while a PSP is responsible for transmission of the proper information in the first place, its obligation ends there. Others have the duty of tracking and capturing that information, one way or another,[19] once it is sent into the system. *See* 47 C.F.R. § 64.1310(a)(1).

**[5]** Because the district court did not deem it relevant, it did not make findings about whether the Flex-ANI codes for the calls in question were sent into the system by GCB and its LEC. That question must now be decided. Therefore, we will vacate the district court's judgment and remand for further proceedings. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1091 (9th Cir. 2002).

III.   *Other Issues*

**[6]** U.S. South claims that certain exhibits of telephone data admitted by the district court were hearsay. However, U.S. South did not make that objection about those exhibits at trial, so the argument is waived. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990); *United States. v. Wilson*, 690 F.2d 1267, 1273-74 (9th Cir. 1982). The argument U.S. South did make was that the information in question was not disclosed to it during discovery. However, the record belies that claim. While it might not have been disclosed in what U.S. South would take to be an ideal form, it was produced and the district court did not abuse its discretion when it admitted the evidence.

---

[18]The FCC has also made it clear that "for payphones to be eligible for compensation 'payphones will be required to transmit specific payphone coding digits.' " 1998 Compensation Order, 13 FCC Rcd. 4998, 5006-07, ¶ 13.

[19]*See, e.g.*, 2003 Payphone Order, 18 FCC Rcd. 19975, 19994, ¶ 39 (SBR may use "technology of its choice to track coinless payphone calls . . . .").

**[7]** U.S. South also complains about the admission of bills received by GCB from its LECs. U.S. South claims that the documents amounted to hearsay. Fed. R. Evid. 801(c). GCB replies that the bills were not admitted for the truth of the matter asserted, because they were admitted only to show that GCB owned the ANIs in question. But that, itself, is a hearsay assertion. *See United States v. Jefferson*, 925 F.2d 1242, 1252 (10th Cir. 1990); *NLRB v. First Termite Control Co., Inc.*, 646 F.2d 424, 426 (9th Cir. 1981). In any event, because there was much other evidence, which made it clear that GCB did have payphone lines for its payphones, any error was harmless. *See Valdivia*, 599 F.3d at 993.

**[8]** U.S. South also complains about the district court's refusal to enforce a putative settlement, but, as the district court pointed out, largely because of U.S. South's refusal to agree to part of the settlement terms, it was not enforceable. We perceive no abuse of discretion. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). To the extent that U.S. South argues that it had agreed to GCB's monetary demand and, therefore, the district court lost jurisdiction, the record belies its assertion. This case is quite different from one where a matter has become moot because an opposing party has agreed to everything the other party has demanded. *See, e.g.*, *Spencer-Lugo v. INS*, 548 F.2d 870, 870 (9th Cir. 1977) (per curiam) (where INS agreed to exactly what petitioners wanted, no case or controversy remained); *see also Samsung Elec. Co, Ltd. v. Rambus, Inc.*, 523 F.3d 1374, 1379 (Fed. Cir. 2008) (where opposing party agreed to pay full amount of other party's attorney's fees, the attorney's fees issue became moot); *Rand v. Monsanto Co.*, 926 F.2d 596, 597-98 (7th Cir. 1991) (when defendant agreed to pay the full amount of plaintiff's demand, no justiciable dispute remained). Here U.S. South never agreed to pay the full amount that GCB wanted. Rather, GCB said it would settle for less money than it claimed it was due if it also received an agreement by U.S. South to enhance its tracking system by doing a different

method of testing. U.S. South then sent a proposed agreement for the lower sum plus some tracking improvements, but GCB wanted a different configuration of tracking improvements. The settlement discussions ultimately fell apart. The district court neither could have nor should have forced GCB to accept the lesser sum, without the tracking improvements. Certainly the district court did not lose jurisdiction over the case.

**[9]** Nor do we perceive any abuse of discretion in the district court's declining to allow post-trial briefing regarding U.S. South's belated primary jurisdiction arguments. Nor do we perceive any abuse of discretion in the district court's refusal to extend discovery deadlines. *See O'Neill*, 50 F.3d at 687-88; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607, 610-11 (9th Cir. 1992).

Finally, U.S. South complains about the interest rate used by the district court and about the amount of the attorney's fees award against it. Because we have set aside the judgment, both the award of interest and the award of fees fall with it. We will not guess at the ultimate outcome; we decline to issue an advisory opinion on those issues.

## CONCLUSION

In this matter, GCB won battles at the district court and U.S. South has won a battle here. Each has hoped for a crushing blow to end this agon. Alas, that will not come today, and, we suppose, their cangling will continue for now. That is to say, we reject GCB's contention that all it and its LEC need to do is make provision for sending a Flex-ANI code with dial-around calls. GCB, through its LEC, must assure that the Flex-ANI is transmitted into the system; their duty ends there. The problem may then be U.S. South's, but we leave the question of whether it must then pay compensation to GCB for another day.

REVERSED and REMANDED for further proceedings.[20] The parties shall bear their own costs on appeal.

---

[20]To avoid any misunderstanding, we hasten to add that nothing we have said here is intended to preclude the district court from taking further evidence on any other issue in the case. Nor do we intend to preclude the district court from revisiting and reconsidering the question of whether the primary jurisdiction doctrine should be applied to this case, especially in view of the fact that there has been some difficulty in determining the proper construction of the FCC's orders. *See Brown*, 277 F.3d at 1173.