ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. CC-13-1476-PaKiLa |
| | ) |
| MARIA G. RIVERA, | ) Bk. No. SA 11-22793-TA |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| | ) |
| MARIA G. RIVERA, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| ORANGE COUNTY PROBATION | ) |
| DEPARTMENT, | ) |
| | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on May 15, 2014,
at Pasadena, California

Filed - June 4, 2014
_____

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Theodor C. Albert, U.S. Bankruptcy Judge, Presiding

_____

Appearances:    Leigh E. Ferrin, Esq. of Public Law Center for
appellant Maria G. Rivera; Adam C. Clanton, Esq. of
Orange County Counsel for appellee Orange County
Probation Department.

_____

Before: PAPPAS, KIRSCHER, and LATHAM,[1] Bankruptcy Judges.

_____

[1]  Hon. Christopher B. Latham, U.S. Bankruptcy Judge for the
Southern District of California, sitting by designation.

PAPPAS, Bankruptcy Judge:

Appellant, chapter 7[2] debtor Maria Rivera ("Debtor") appeals the order of the bankruptcy court determining that Appellee, Orange County Probation Department ("Orange County"), did not violate the discharge injunction in Debtor's case when it attempted to collect from her after bankruptcy because the debt she owed to Orange County was excepted from discharge under § 523(a)(5) as a "domestic support obligation." The issue presented in this appeal is a novel one in this Circuit, and we AFFIRM.

**FACTS**

Prebankruptcy Events

Debtor's minor son was incarcerated in Orange County from 2008 to 2010, for a total of 593 days. California law provides that "[t]he father [or] mother . . . of a minor . . . shall be liable for the reasonable costs of support of the minor while the minor is . . . detained in . . . any institution or other place . . . pursuant to an order of the juvenile court." CAL. WELF. & INST. CODE § 903(a). The law endeavors, however, "to ensure that liability is imposed only on persons with the ability to pay." CAL. WELF. & INST. CODE § 903(c). Moreover, the "costs of support" a parent is required to pay are not the total costs of confinement, but "only [the] actual costs incurred by the county for food and food preparation, clothing, personal supplies, and medical expenses, not to exceed . . . a maximum of thirty dollars ($30) per day . . . ." Id. In addition to costs of support, California

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

law provides that "[t]he father [or] mother . . . of a minor . . . shall be liable for the costs to the county or the court . . . of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court." CAL. WELF. & INST. CODE § 903.1(a).[3]

According to Orange County, the total cost to incarcerate Debtor's son amounted to approximately $420 a day. However, in obedience to the limitation in the statute, it sought to collect only $23.90 a day from Debtor, which represented the expense for her son's "food and food preparation, clothing, personal supplies, and medical expenses" while he was incarcerated. In addition to these expenses, Orange County sought $2,199 from Debtor for her son's legal representation while in custody.

As was its practice, Orange County provided several statements to Debtor itemizing the expenses of her son's incarceration, along with the amount of the legal fees incurred for his representation; it also sent Debtor a copy of court orders requiring her to meet with a financial officer to determine her ability to pay these costs pursuant to Cal. Welf. & Inst. Code §§ 903(c), 903.1, and 903.45. Debtor did not respond to any of these communications.[4]

On May 10, 2010, $9,508.60 was paid to Orange County on

---

[3] The additional safeguards found in Cal. Welf. & Inst. Code § 903(c) that require a parent to have the ability to pay, and that place a cap on the amount to be paid, are not present in § 903.1 requiring that the parent pay for the minor's legal expenses. However, under Cal. Welf. & Inst. Code § 903.45, a "county financial evaluation officer" must determine whether the responsible person has the ability to pay all or part of the costs under both § 903 and § 903.1. The officer then reports his or her findings as to the parent's ability to pay to the state court.

[4] While Debtor did not act on these statements or orders of the court, the son's father met with Orange County upon his receipt of this information, and the parties agreed to a payment plan he could afford, which was filed with the juvenile court.

-3-

Debtor's account,[5] although this payment did not satisfy the full outstanding balance of the costs. After Orange County sent several more notices to Debtor about the remaining amount due, a final notice was sent requiring her to appear for a court hearing to determine her ability to pay. When Debtor failed to appear at the hearing, on July 20, 2011, a judgment was entered by the juvenile court requiring Debtor to pay to Orange County the remaining support costs and legal expenses incurred while her son was in custody, which amounted to $9,905.40.[6]

## Bankruptcy Proceedings

Debtor filed a chapter 7 petition on September 12, 2011. Debtor listed Orange County as a priority, unsecured creditor in her schedules, and Orange County received notice of the bankruptcy filing. The chapter 7 trustee appointed in the case determined there were no assets to administer, Debtor received a discharge on January 4, 2012, and the bankruptcy case was closed January 10, 2012.

After the case closed, assuming that the debt was excepted

---

[5] While it does not impact the issue on appeal, the record is unclear as to the circumstances surrounding this payment. In her declaration filed in the bankruptcy court, Debtor indicated she paid this amount from the proceeds of the sale of her house. However, the collections manager for Orange County stated in her declaration that, on April 28, 2010, an escrow company requested balance information from Orange County concerning the amount due on its claim, and on May 10, 2010, the escrow company made the $9,508.60 payment to Orange County. This suggests, contrary to Debtor's contention that she voluntarily paid this sum, that the escrow company submitted the payment to Orange County to satisfy a lien or similar charge on Debtor's home.

[6] Debtor has not argued that she is not indebted to Orange County, nor has she challenged the amount of the debt alleged by Orange County, in this appeal.

-4-

from discharge as a domestic support obligation under § 523(a)(5), Orange County resumed its efforts to collect the debt from Debtor by continuing to send her statements of the amount due, and a representative of the creditor telephoned Debtor to persuade her to pay the debt.

Debtor sought counsel concerning Orange County's collection activities, who corresponded with the Orange County's attorney, expressing the view that the debt had been discharged. When Orange County would not relent, on April 18, 2013, Debtor filed a motion to reopen the bankruptcy case, along with a motion for an order directing Orange County to show cause ("OSC") why it should not be held in contempt for violation of the discharge injunction. The bankruptcy court reopened the case, entered the OSC, scheduled a hearing, and requested briefing from the parties, in particular asking them to address the changes to §§ 523(a)(5) and 101(14A) made in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).

After considering the parties' briefing, and shortly before the scheduled hearing, the bankruptcy court issued a lengthy, thoughtful tentative ruling (the "First Tentative"). In it, the court concluded that Orange County had violated the discharge injunction because the debt it sought to collect from Debtor after entry of the discharge order was not excepted from discharge under § 523(a)(5). The First Tentative noted the paucity of case law and legislative history concerning the scope of § 523(a)(5) in relation to debts such as those held by Orange County after BAPCPA. However, the court agreed with the conclusion reached by the bankruptcy court in In re Rosen, 11-07651-BHL-7, 2012 WL

1565617, at *2 (Bankr. S.D. Ind. May 2, 2012), a case with facts similar to those in this case, that "an involuntary detention in a juvenile facility hardly seems to fit within the purpose and spirit [of §§ 523(a)(5) and 101(14A)]."  The bankruptcy court also discussed pre-BAPCPA cases that came to the same conclusion.

In addition, in the First Tentative, the bankruptcy court cited In re Jerald C., 678 P.2d 917 (Cal. 1984), a California Supreme Court decision, for the proposition that the types of expenses specified in Cal. Welf. & Inst. Code § 903 were costs "incurred primarily in protecting society from miscreant minors . . . . "  Based upon this conclusion, and noting it must construe exceptions to discharge narrowly, the bankruptcy court concluded that the costs were not in the nature of support for purposes of § 523(a)(5).

At the OSC hearing on June 25, 2013, Orange County argued that the First Tentative should not be adopted as the bankruptcy court's final ruling because, among other reasons, In re Rosen had been incorrectly decided, and the California Supreme Court, in Cnty. of San Mateo v. Dell J., 762 P.2d 1202 (Cal. 1988), had significantly modified In re Jerald C.  After listening to the parties' arguments, the bankruptcy court determined it would benefit from further briefing on the issues, and it ordered the parties to address the impact of Cnty. of San Mateo on whether a minor's expenses, as limited in Cal. Welf. & Inst. Code § 903, constitute support obligations of the minor's parents.  In addition, the court noted it needed further evidence of the amount of Debtor's damages if it were to finally decide that Orange County had violated the discharge injunction.  The court continued

-6-

the OSC hearing.

Before the continued hearing, the bankruptcy court issued another tentative ruling (the "Second Tentative") in which it reversed course and decided that the debt owed to Orange County was excepted from discharge in Debtor's bankruptcy case under § 523(a)(5) and, therefore, Orange County had not violated the discharge injunction. In the Second Tentative, the bankruptcy court again noted that In re Rosen was the only decisional law it could locate discussing this issue post-BAPCPA; however, upon further review of that opinion, the court agreed with Orange County that In re Rosen had been incorrectly decided because that bankruptcy court had primarily relied on a pre-BAPCPA case law, and the court had not adequately analyzed the significant changes to §§ 523(a)(5) and 101(14A) made by Congress in BAPCPA. Instead, the bankruptcy court concluded that the plain language of the Code provisions, as amended by BAPCPA, compelled the conclusion that the debt was excepted from discharge as a domestic support obligation owed to a governmental unit. The bankruptcy court also reasoned that, in Cnty. of San Mateo, the California Supreme Court had reviewed the amended Cal. Welf. & Inst. Code § 903 and determined that the expenses provided in the statute are in the nature of support. For these reasons, the bankruptcy court's conclusion in the Second Tentative was to deny Debtor's motion to hold Orange County in contempt.

At the continued hearing on August 27, 2013, after again considering the parties' arguments, the bankruptcy court announced that it would deny Debtor's motion because the debt at issue was excepted from discharge pursuant to § 523(a)(5). In its comments,

-7-

the court largely restated the substance of the Second Tentative; however, it did not expressly adopt the Second Tentative in making its oral ruling.

The bankruptcy court requested that counsel for Orange County prepare an order for entry by the court consistent with the oral ruling. Orange County's counsel thereafter lodged a proposed order, but Debtor objected to its form and submitted an alternative proposed order. Debtor's objection took issue with the language included in the title and content of the proposed order, and in particular, pointed out that the court had not expressly adopted the Second Tentative in making its oral ruling at the continued hearing.

Without mentioning Debtor's objection, on September 16, 2013, the bankruptcy court entered the order proposed by Orange County. That order purported to adopt the Second Tentative, provided that Debtor's debt to Orange County was excepted from discharge as a domestic support obligation, and declined to find that Orange County was in contempt.

Debtor filed a timely notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in requesting additional briefing by the parties after the initial hearing on the OSC.

Whether the bankruptcy court erred in entering the order proposed by Orange County without expressly ruling on Debtor's objection to the form of that order.

Whether the bankruptcy court erred in determining the debt owed to Orange County was a "domestic support obligation" that was excepted from discharge in Debtor's bankruptcy case under § 523(a)(5).

**STANDARDS OF REVIEW**

We review case management decisions of the bankruptcy court for abuse of discretion. GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc., 650 F.3d 1257, 1262 (9th Cir. 2011) (citing O'Neill v. United States, 50 F.3d 677, 687 (9th Cir. 1995)).

We review the bankruptcy court's interpretation and application of a local rule for abuse of discretion. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009), cert. denied, 558 U.S. 1048 (2009); In re Nguyen, 447 B.R. 268, 276 (9th Cir. BAP 2011).

"We review the bankruptcy court's factual determination that a debt was for alimony, maintenance, or support for clear error. 'To the extent that questions of fact cannot be separated from questions of law, we review these questions as mixed questions of law and fact applying a de novo standard.'" Seixas v. Booth (In re Seixas), 239 B.R. 398, 401 (9th Cir. BAP 1999) (quoting Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 135 (9th Cir. BAP 1997) (internal citation omitted)); see also Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir. 1998) ("When determining whether a particular debt is within the § 523(a)(5) exception to discharge, a court considers whether the debt is 'actually in the nature of . . . support.' This question is a factual determination made by the bankruptcy court as a matter of federal bankruptcy law.") (internal citations omitted)).

-9-

The bankruptcy court's interpretation of § 523(a)(5) is a question of law we review de novo. Bendetti v. Gunness (In re Gunness), 505 B.R. 1, 4 (9th Cir. BAP 2014); Cnty. of El Dorado v. Crouch (In re Crouch), 199 B.R. 690, 691 (9th Cir. BAP 1996).

**DISCUSSION**

**I.**

**The bankruptcy court did not err in considering additional authority at the OSC hearing, in requesting further briefing, or in entering the order proposed by Orange County.**

Although Debtor's brief on appeal primarily focuses on whether the Orange County debt is excepted from discharge per § 523(a)(5), she also argues that the bankruptcy court committed two procedural errors. First, Debtor contends that the court erred in allowing Orange County to raise and discuss, at the first OSC hearing, a case not cited in its briefing before the hearing. Second, citing Local Rule 9021-1(b), Debtor contends that the bankruptcy court erred by not ruling on her objection to the form of Orange County's proposed order before entering it. We can easily dispense with these contentions.

First, Debtor claims the bankruptcy court erred in allowing Orange County to discuss a more recent California Supreme Court decision at the initial OSC hearing in response to the First Tentative that it had not cited in its prior briefing. To support this claim of error, Debtor cites appellate authority holding a litigant waives an argument on appeal if it is not addressed in its opening brief.

While it is certainly correct that an issue not addressed by a party in its opening brief on appeal may be waived, see Francis

-10-

v. Wallace (In re Francis), 505 B.R. 914, 920 (9th Cir. BAP 2014) (citing United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990)), the same is not true at the trial court level. See El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003) (holding the trial court did not abuse its discretion in considering a new argument raised in a reply brief so long as the adverse party is given an opportunity to respond). Here, at the initial OSC hearing, Orange County cited Cnty. of San Mateo to inform the court of a more recent, and what it urged was a more complete, analysis of Cal. Welf. & Inst. Code § 903 by the California Supreme Court. In doing so, we understand that Orange County was responding to the First Tentative issued shortly before the hearing, in which the bankruptcy court relied on an older California Supreme Court case discussing the California statute, In re Jerald C. After being advised of the more recent, and arguably more relevant authority, the bankruptcy court ordered both parties to brief its impact on the resolution of the issues pending before the court in order to make an informed decision, and continued the hearing.

Debtor did not, at the time, object to the bankruptcy court's decision to require further briefing and to continue the OSC hearing, and we decline to entertain Debtor's objection on appeal. Moreover, in our view, Debtor was not prejudiced by the court's approach; indeed, to us, this seems to be an altogether reasonable and pragmatic decision by the bankruptcy court in managing this case. Put simply, it was not an abuse of discretion.

Next, Debtor argues that the bankruptcy court abused its discretion by entering the order lodged by Orange County without

-11-

expressly ruling on her objection to the form of the proposed order. Debtor invokes Local Rule 9021-1(b)(3), which outlines the process by which proposed orders are to be submitted to the bankruptcy court for entry by the court and supplies a procedure if there is an objection to the proposed order. See Local Rule 9021-1(b)(3)(A), (B). In that event,

> Unless the court otherwise directs, a proposed order will not be signed by the judge unless (i) opposing counsel has endorsed thereon an approval as to form; (ii) opposing counsel has stipulated thereto on the record at the hearing[;] or (iii) the time for objection to a form of order . . . has expired . . . . If it finds the ends of justice so requires, the court may conduct a hearing on the proper form of the order or decide any objection thereto without a hearing.

Local Rule 9021-1(b)(3)(C).

Here, the bankruptcy court entered the order lodged by Orange County after Debtor filed her objection and alternative proposed order. By entering the order prepared by Orange County, despite Debtor's objection, the bankruptcy court effectively resolved the objection without a hearing, as is allowed by the Local Rule. While perhaps the bankruptcy court should have specifically acknowledged Debtor's objection before entering the Orange County proposed order, not doing so does not amount to an abuse of discretion under a Local Rule that prescribes a procedure "[u]nless the court otherwise directs." Again, even if the bankruptcy court should have addressed Debtor's objection to the order proposed by Orange County, we perceive no prejudice to Debtor from the bankruptcy court's decision to promptly enter that order.

-12-

Finally, that the order proposed by Orange County and entered by the court adopts the Second Tentative, even though the bankruptcy court did not expressly so instruct at the hearing, is also not an abuse of discretion. In deciding to incorporate the reasoning of the Second Tentative, we presume the court was exercising its discretion to modify its oral ruling in the final order. See Rule 7052(b); Meyer v. Lenox (In re Lenox), 902 F.2d 737, 740 (9th Cir. 1990) (holding that bankruptcy courts "have the power to reconsider, modify[,] or vacate their previous orders so long as no intervening rights have become vested") (citing Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986); see also Cashco Fin. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 774 n.9 (9th Cir. BAP 2006) (noting that a court's written order controls over an inconsistent oral ruling). As noted above, the bankruptcy court's oral ruling at the hearing closely tracked, and referred to, the analysis of the issues it made in the Second Tentative. The court did not abuse its discretion when it took the additional step of expressly adopting the Second Tentative in the order since, at bottom, the proposed order conformed to the court's oral ruling.

**II.**

**The debt owed to Orange County is a domestic support obligation that is excepted from discharge.**

Debtor argues that the plain language of §§ 523(a)(5) and 101(14A), the legislative history of the BAPCPA amendments to those statutes, and federal and state case law, all compel the conclusion that the debt owed to Orange County was discharged in Debtor's bankruptcy case. Orange County counters, arguing that,

-13-

applying the BAPCPA amendments to the Code, those provisions plainly except its debt from discharge, despite the reasoning of pre-BAPCPA cases, and one post-BAPCPA case, to the contrary.

A.  Pre-BAPCPA

Prior to 2005, § 523(a)(5) provided:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such a spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that-

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

In interpreting and applying this statute, the Panel had held, "[u]nder a literal application of § 523(a)(5), to be nondischargeable a debt must be owed specifically to the 'spouse, former spouse, or child.'"  Eisen v. Linn (In re Linn), 38 B.R. 762, 763 (9th Cir. BAP 1984).  The Panel continued the "literal application" of the language of § 523(a)(5) in a case factually similar to the case at bar in Cnty. of El Dorado v. Crouch (In re Crouch), 199 B.R. 690 (9th Cir. BAP 1996).  In In re Crouch, El Dorado County, California, sought to except from discharge a debt for costs incurred in housing a debtor's minor son in a juvenile detention facility pursuant to Cal. Welf. & Inst. Code § 602.  Id.

-14-

at 691.  The Panel held that the debtor's obligation to the county was discharged because, although in the nature of support, the debt was payable to the county, not to the "former spouse, spouse, or child of the debtor."  Id. at 693; see also In re Spencer, 182 B.R. 263, 267-68 (Bankr. E.D. Cal. 1995) (holding that a debt under the old version of Cal. Welf. & Inst. Code § 903 was discharged because the debt "pursuant to Cal. Welf. & Inst. Code § 903 was owed and payable directly to the [county], not directly to the [d]ebtor's minor children . . . [t]herefore, although it arises from the support of [d]ebtor's minor children, the obligation does not fall within the exception to discharge under 11 U.S.C. § 523(a)(5).").

     B.  BAPCPA

     BAPCPA significantly changed the structure, language, and scope of § 523(a)(5).  Post-2005, § 523(a)(5) simply provides that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt— . . . for a domestic support obligation[.]"  To give this discharge exception meaning, BAPCPA added a new definitional section, § 101(14A), to the Code:

>           The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
>           (A) owed to or recoverable by— (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit;
>
>           (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's

-15-

parent, without regard to whether such debt is expressly so designated;

(c) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of— (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collection the debt.

The term "governmental unit," as used in § 101(14A), is also defined in § 101(27), and that definition includes a State and its agencies and departments.[7]

As can be seen, compared to the pre-2005 Code, Congress modified § 523(a)(5) in BAPCPA by "moving and refining the detail of what constitutes a domestic support obligation into a new definitional provision [of] § 101(14A)." In re Gunness, 505 B.R. at 4. These amendments "enabled Congress to utilize a uniform detailed definition of the term 'domestic support obligation' in

---

[7]   Section 101(27) provides:

The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

The parties do not dispute that Orange County is a governmental unit.

-16-

several different sections of the [B]ankruptcy [C]ode."[8]  Id. at 5 (citing 2 COLLIER ON BANKRUPTCY ¶ 101.14A (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); Deemer v. Deemer (In re Deemer), 360 B.R. 278, 280-81 (Bankr. N.D. Iowa 2007)).

In addition to this restructuring, BAPCPA also enhanced the definition of a support obligation in two ways as compared to the prior statute, which are significant in this appeal.  First, to constitute a nondischargeable support obligation, no longer must a debt be owed only "to a spouse, former spouse, or child of the debtor."  As the result of the 2005 amendments, debts that are "owed to or recoverable by" a "governmental unit" may also constitute domestic support obligations.  § 101(14A)(A)(ii); see also In re Gunness, 505 B.R. at 4 (comparing the former statutes with the BAPCPA revisions).[9]  And second, BAPCPA expanded the "nature" of the debt that is excepted from discharge as a domestic

---

[8]  The term "domestic support obligation" ("DSO") appears in several other Code provisions, including, for example: § 362(b)(2)(A)(ii) and (B) (the automatic stay does not prohibit the establishment or modification of a DSO, or the collection of a DSO from property that is not property of the estate); § 507(a)(1) (DSO granted a first priority in distributions to creditors); § 707(c)(3) (bankruptcy court may not dismiss a bankruptcy case if debtor proves it is necessary to satisfy a claim for a DSO); § 1307(c)(11) (bankruptcy court may dismiss a case for failure of debtor to pay a DSO); § 1325(a)(8) (bankruptcy court shall confirm debtors plan if, among other things, debtor is current on all post-petition DSO payments); § 1325(b)(2) (post-petition DSO subtracted from calculation of "disposable income"); and § 1328 (debtor not entitled to a discharge unless all DSO payments are made).

[9]  To the extent that Cnty. of El Dorado v. Crouch (In re Crouch), 199 B.R. 690, 692 (9th Cir. BAP 1996), Eisen v. Linn (In re Linn), 38 B.R. 762, 763 (9th Cir. BAP 1984), and In re Spencer, 182 B.R. 263, 267-68 (Bankr. E.D. Cal. 1995) decided that, to be excepted from discharge under § 523(a)(5) a debt must be owed directly to, and only to, a debtor's spouse, former spouse, or child, those holdings have been abrogated by the BAPCPA amendments.

-17-

support obligation.  Under the revised Code, the inquiry now is whether a debt is "alimony, maintenance, or support (<u>including assistance provided by a governmental unit</u>) of such spouse, former spouse, or child of the debtor . . . ."  § 101(14A)(B) (emphasis added).[10]

C.  The Orange County Debt

Given the changes made by BAPCPA, was the Orange County debt excepted from discharge in Debtor's bankruptcy case?

The answer depends upon an interpretation of § 101(14A) and amended § 523(a)(5), and any interpretation of the Bankruptcy Code begins, and sometimes ends, with its text.  <u>Ransom v. FIA Card Servs., N.A.</u>, 131 S. Ct. 716, 723-24 (2011); <u>Danielson v. Flores (In re Flores)</u>, 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (citing <u>Miranda v. Anchondo</u>, 684 F.3d 844, 849 (9th Cir. 2011), <u>cert. denied</u>, 133 S. Ct. 256 (2012)).  "Furthermore, 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"  <u>In re Flores</u>, 735 F.3d at 859 (quoting <u>Gale v. First Franklin Loan Servs.</u>, 701 F.3d 1240, 1244 (9th Cir. 2012)).  "If the statutory language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry must cease."  <u>Fireman's Fund Ins. Co. v. Plant Insulation Co. (In re Plant Insulation Co.)</u>, 734 F.3d 900, 910 (9th Cir. 2013) (citations and internal quotation marks omitted).  Of

[10]  While we conclude the language of the applicable Code provisions is plain, requiring no further inquiry concerning the intent of Congress in enacting the relevant BAPCPA amendments, we note that the legislative history of these amendments, for the most part, merely restates the provisions of the new statutes without providing any commentary about, among other changes, the addition of a governmental unit as a creditor.  <u>See</u> H.R. REP. No. 109-31, 109th Cong., 1st Sess. 59 (2005).

-18-

course, to be true to the policies of the Code, courts must limit the exceptions to discharge provisions to those plainly expressed in § 523(a). <u>Bullock v. BankChampaign, N.A.</u>, 133 S. Ct. 1754, 1760 (2013); <u>Sachan v. Huh (In re Huh)</u>, 506 B.R. 257, 267 (9th Cir. BAP 2014) (en banc).

Applying the plain language of the Code provisions to the facts of this case, we conclude that the debt owed by Debtor to Orange County qualifies as a nondischargeable domestic support obligation because, without factual dispute, that debt: (1) accrued before the order of relief; (2) is owed to a governmental unit; (3) was incurred for the support of Debtor's child as "assistance provided by a governmental unit;" (4) was established before Debtor's bankruptcy by an order of the state court; and (5) has not been assigned to a nongovernmental entity for collection. As to the satisfaction of these elements, Debtor takes issue with only one of them, (3) above, arguing that the bankruptcy court's

> focus on the phrase "in the nature of support" in [§] 101(14A) while ignoring the term "domestic" in [§] 523(a)(5) was clear error. The plain language of the two sections must be read together. When read together, it is apparent that the purpose of [§§] 101(14A) and 523(a)(5) is to prevent the debtor from discharging obligations that arise from being a parent or a spouse. It is not to reimburse government agencies for money spent in housing children brought into our delinquency system for the protection of society.

Appellant's Op. B. at 12. Instead, Debtor argues, we should adopt the reasoning of <u>In re Rosen</u>, which found a debt similar to the one at issue here was not excepted from discharge. 2012 WL 1565617, at *1.

While the determination of whether the nature of the debt is

"alimony, maintenance, or support" is a question of federal law, "[one] relevant factor for the bankruptcy court to consider in making this determination is how the particular state law characterizes the debt." In re Chang, 163 F.3d at 1140 (citing Marks v. Catlow (In re Catlow), 663 F.2d 960, 962 (9th Cir. 1981)). In our view, California law would characterize the Orange County debt as support.

Acting under authority of the California statutes, Orange County seeks to recover from Debtor the daily expense it incurred in providing her son "food and food preparation, clothing, personal supplies, and medical expenses" while he was incarcerated. CAL. WELF. & INST. CODE § 903(c). These sorts of costs are quintessentially support expenses, whether they are incurred by a child's parents or by a governmental unit. See, e.g., Leppaluoto v. Combs (In re Combs), 101 B.R. 609, 615-16 (9th Cir. BAP 1989) (explaining that support obligations are those that provide a "necessity of life"); Lightner v. Lightner (In re Lightner), 77 B.R. 274, 277 (Bankr. D. Mont. 1987) (stating that support allows an individual to "maintain daily necessities") (citing Yeates v. Yeates (In re Yeates), 807 F.2d 874, 879 (10th Cir. 1986) and Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1109 (6th Cir. 1983)); see also Leibowitz v. County of Orange (In re Leibowitz), 217 F.3d 799, 803 (9th Cir. 2000) (holding that child support payments due to a county were excepted from discharge under former § 523(a)(18) because the expenses the county sought to collect from the debtor benefitted the child); Gianakas v. Gianakas (In re Gianakas), 917 F.2d 759, 763 (3d Cir. 1990) (holding "[a]n obligation that serves to maintain daily

-20-

necessities such as food, housing[,] and transportation is indicative of a debt intended to be in the nature of support.").

While Debtor argues that Orange County is effectively seeking to tax her for the cost of protecting society through the incarceration of her son, the California statutes belie that suggestion. In burdening the parent of an incarcerated minor for expenses incurred by a county, California law carefully limits the types of charges that may be assessed to traditional support obligations. As noted above, Cal. Welf. & Inst. Code § 903(c) provides that the "costs of support" that can be levied against the parent in this context include "only [the] actual costs incurred by the county for food and food preparation, clothing, personal supplies, and medical expenses, not to exceed . . . a maximum of thirty dollars ($30) per day . . . ."

The limitation on the kinds of expenses that can be recovered from the parent of an incarcerated minor in the California statutes represents a change from its prior law. In In re Jerald C., the California Supreme Court had held, in resolving a constitutional challenge to the prior version of Cal. Welf. & Inst. Code § 903, that expenses incurred by the government in confining juvenile offenders were "not for the purpose of providing support and maintenance for the committed person but for the purpose of protecting society." 678 P.2d 917, 921 (Cal. 1984). However, the court's decision left open the possibility that the California legislature might amend the statute to "require responsible parents to pay a part of the costs of maintaining a minor in a county institution." Id. at 925 (Kaus, J., concurring). In a clear response to In re Jerald C., the

-21-

California legislature amended Cal. Welf. & Inst. Code § 903 to its present form to delineate the specific costs of support that could be recovered by a county, and to place a cap on the total amount that was recoverable. Addressing a challenge to the amended statute in Cnty. of San Mateo v. Dell J., 762 P.2d 1202 (Cal. 1988), the supreme court held the statute was constitutional, and characterized the newly listed kinds of recoverable expenses in Cal. Welf. & Inst. Code § 903(c) as those "for the reasonable costs expended for support and maintenance of the minor while placed outside the family home." Id. at 1211.

As can be seen, Debtor's argument that the costs sought to be recovered from Debtor by Orange County encompass more than support debts is inconsistent with state statutory and case law.

Debtor's other arguments also lack merit. For example, in construing § 101(14A), she urges that, instead of relying on the meaning of "support obligation," we should focus on the word "domestic." To Debtor, inclusion of "domestic" in the defined term requires that only those support obligations that arise out of a familial relationship are covered.

While Debtor's contention may have prevailed prior to 2005,[11]

_____

[11] For example, in 1998, the Ninth Circuit observed that:

> The § 523(a)(5) exception to discharge strikes a balance between competing policies. On the one hand, the goal of providing a "fresh start" to the bankrupt debtor requires that exceptions to discharge be confined to those plainly expressed. In re Klapp, 706 F.2d 998, 999 (9th Cir.1983). On the other hand, this court has recognized "an overriding public policy favoring the enforcement of familial obligations." Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir.1984).

In re Chang, 163 F.3d at 1140.

-22-

since BAPCPA, this argument is foreclosed. By adopting the definition of domestic support obligation in § 101(14A) which includes "assistance given by a governmental unit," provided to the "child of the debtor," Congress expanded the scope of that term beyond strictly family incurred debts. In other words, while the Code now requires that there be a family tie between the recipient of the support and the debtor, the BAPCPA definition crafted by Congress provides that debts owed to a governmental unit can qualify as a domestic support obligation.[12]

Debtor also urges us to adopt the reasoning of In re Rosen, noting the lack of binding, or even other persuasive precedent on this issue. But, like the bankruptcy court, we disagree with the reasoning of In re Rosen, and thus we respectfully decline to follow it, particularly in the light of the California statutes and the case law interpreting those laws.

In In re Rosen, Montgomery County, Indiana argued that its debt for a portion of the expenses it incurred in housing the debtor's minor son in a juvenile detention facility was excepted from discharge under § 523(a)(5). The bankruptcy court decided that even though the county had provided support for the debtor's son while he was detained, "an involuntary detention in a juvenile facility hardly seems to fit within the purpose and spirit of the statute," and therefore concluded that the debt was not excepted from discharge under § 523(a)(5). In re Rosen, 2012 WL 1565617, at *2.

In making its decision, the bankruptcy court relied on a pre-

_____

[12] While, in this context, the creditor is not a family member of the debtor, the debt in question represents the cost of providing support to debtor's relative, her son. In this sense, then, the "obligation" is a domestic one in the traditional sense.

-23-

BAPCPA case, <u>DeKalb Cnty. Div. of Family and Children Servs. v. Platter (In re Platter)</u>, 140 F.3d 676 (7th Cir. 1998). In that case, DeKalb County, Indiana sought to recover expenses it incurred in housing a debtor's minor son in a juvenile detention facility. The bankruptcy court concluded, and the district court agreed, that the debt was dischargeable. On appeal, the Seventh Circuit reviewed the applicable Indiana statute, and concluded "[t]he plain meaning of § 523(a)(5) does not cover the present situation, where the debtor owes a governmental agency directly for the support of the debtor's child." <u>Id.</u> at 681. Notably, the Seventh Circuit suggested a pragmatic solution to the county's predicament:

> If government entities . . . do not wish to be left providing room and board to juvenile delinquents without a means of collecting against bankrupt parents, then they may lobby Congress for another amendment to § 523(a)(5) . . . . If we accept [the county's] invitation to disregard § 523(a)(5) as it currently exists we would be usurping the authority of these elected bodies through an act of judicial legislation as well as ignoring the plain meaning of the statute. This we cannot do.

<u>Id.</u> at 683.

We decline to follow <u>In re Rosen</u> because we do not believe the bankruptcy court in that case properly accounted for the considerable changes to §§ 523(a)(5) and 101(14A) occasioned by BAPCPA, and because it relied on the Seventh Circuit's pre-BAPCPA analysis of § 523(a)(5). Rather, we agree with the bankruptcy court's statement in this case that: "[t]he court is left to conclude that the change in [§§ 523(a)(5) and 101(14A) as implemented by BAPCPA] was probably in deliberate response to

-24-

cases like . . . [In re] Platter and several others which have found obligations in the nature of support still dischargeable, but only because of the narrow language of old § 523(a)(5)." Simply put, Congress broadened the categories of creditors that could take advantage of the § 523(a)(5) exception to discharge in BAPCPA, and Orange County, as a governmental unit, now qualifies for an exception to discharge in this case.

**CONCLUSION**

Because of the intervention of BAPCPA, we are not bound to apply our pre-2005 case law deciding that a debt owed to a county for the expenses of incarcerating the debtor's child is discharged in bankruptcy. See Ball v. Payco-General Am. Credits, Inc. (In re Ball), 185 B.R. 595, 597 (9th Cir. BAP 1995) ("We will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings."). Instead, by applying the plain language of amended § 523(a)(5) and new § 101(14A), we conclude that the debt Debtor owes to Orange County is excepted from discharge as a domestic support obligation.[13] We therefore AFFIRM the order of the bankruptcy court denying Debtor's motion to hold Orange County in contempt for violating the discharge injunction.

---

[13] Debtor did not separately challenge Orange County's inclusion of the legal expenses it incurred in providing representation for Debtor's son in the debt it claimed to be excepted from discharge. In other contexts, the Ninth Circuit has held that fees incurred for the minor's benefit are in the nature of support. In re Lebowitz, 217 F.3d at 803 (holding that costs that benefitted the child were in the nature of support and nondischargeable); In re Chang, 163 F.3d at 1141 (holding court costs incurred for the benefit of a debtor's child were support under § 523(a)(5)). However, because Debtor has not argued that, even if the living expense components of the debt are not discharged, the same should not be true of the legal costs, we do not address that point in this appeal.

-25-