In re LAVENTHOL & HORWATH, Debtor.

No. 91 CIV 5295 (KC).

United States District Court, S.D. New York.

April 14, 1992.

Steven Johnson, Milgrim Thomajan & Lee, P.C., New York City, for petitioner.

Edmund M. Emrich, Kaye Scholer Firrman Hays & Handler, New York City, for respondent.

## MEMORANDUM ENDORSEMENT

CONBOY, District Judge.

Representatives of the PTL Lifetime Partner Class ("PTL") move for mandatory or discretionary withdrawal of the reference from the U.S. Bankruptcy Court for the Southern District of New York of jurisdiction over the claims filed by PTL for alleged violations of the debtor, Laventhol & Horwath ("L & H"), of federal securities laws, the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and other related state statutory claims. PTL seeks to withdraw the reference with regard to all claims filed by PTL against L & H in the proceeding captioned 90 B 13839 (CB).

## I. *Background*

This motion was filed shortly before the four-year anniversary of litigation between PTL and L & H.

On November 17, 1987, the PTL Class filed an action before the Honorable James B. McMillan of the United States District Court for the Western District of North Carolina against, *inter alia,* the former evangelist James Bakker, two accounting firms—Deloitte Haskins & Sells and L & H—L & H's partner William J. Spears, and John Does 1–10, for primary and secondary violations of Federal Securities Laws, RICO, and several North and South Carolina statutes. Each of the claims against L & H arises out of L & H's alleged actions and omissions as independent accountants and auditors of the PTL organization during the time period May, 1985 through April, 1987.

The above action ("the North Carolina action") lasted over three years and involved numerous discovery and substantive motions. The docket sheet of the North Carolina action ("N.C. Docket Sheet") is fifty-one pages long and reveals the following abbreviated litigation history. On July 8, 1988, L & H moved to dismiss PTL's amended complaint, and Judge McMillan denied the motion on July 5, 1990. N.C. Docket Sheet at 27. On November 2, 1989, L & H and Spears moved for summary judgment, and PTL cross-moved for partial summary judgment. On April 26, 1990, Judge McMillan denied both parties' motions. N.C. Docket Sheet at 30. As of the April 26, 1990 summary judgment order, the amended complaint alleged, *inter alia,* RICO causes of action against L & H based on primary and secondary violations of laws against money laundering, transfer of stolen property, and sale or receipt of stolen property. On August 7, 1990, Judge

McMillan allowed PTL to amend its complaint a second time, *inter alia,* to name L & H for RICO causes of action based on aiding and abetting and conspiracy violations of laws against wire fraud and mail fraud. N.C. Docket Sheet at 32. The new complaint also named L & H for RICO causes of action based on primary and secondary violations of federal securities law. PTL Restated Amended Complaint, Certificate of Claude Montegomery, Exhibit 1, at ¶¶ 218–240 [1].

On October 24, 1990, the North Carolina jury trial began. On November 21, 1990, only one day after PTL rested its case, L & H filed for bankruptcy under chapter 11 of title 11 of the United States Code in the Southern District of New York, before the Honorable Cornelius Blackshear ("the Bankruptcy Court"). L & H further received statutory protection from the accompanying automatic stay [2]. Upon suspending litigation as to L & H, Judge McMillan stated:

> If I didn't feel I was compelled to, I wouldn't sign this order, because it cannot have been thought up within the last week or two. It was bound to have been in the forefront of the minds of a lot of bright people for a long time. Trial Transcript, *Teague et al. v. Bakker et al.,* Civ. No. CL–87–514–M, at 5277.

On January 8, 1991, following an evidentiary hearing, the Bankruptcy Court issued a preliminary injunction order, which *inter alia,* preliminarily enjoined litigation and discovery against senior principals of L & H through the expiration date of L & H's exclusive right to file a reorganization plan. Affidavit of Jacob R. Brandzel Dated September 17, 1991 ("Brandzel Afft.") ¶ 11.

On July 28, 1991, PTL filed its claim against L & H in the amount of $453,928,020 in Bankruptcy Court and attached to the notice of claim a copy of the North Carolina restated amended complaint. As of the date of the instant motion, L & H had not filed an objection to PTL's claim. *Id.* ¶ 18.

On July 31, 1991, PTL filed in the Bankruptcy Court for a motion pursuant to §§ 105 and 362 of the Bankruptcy Code for relief from the automatic stay and modification of the January 8, 1991 preliminary injunction order. On August 29, 1991, the Bankruptcy Court held a hearing as to the motion for relief of the stay. At the hearing, counsel for PTL stated,

> [T]his is a classic case of prepetition litigation. It had gone to trial, the discovery was complete [,] the Plaintiffs' case against all Defendants was complete.... Transcript of Hearing before the Hon. Cornelius Blackshear Dated August 29, 1991 ("Stay Hearing Transcript") at 12.

Nevertheless, without meaningful explanation, counsel for PTL stated before the Bankruptcy Court and in its brief on the instant motion that the purpose of the request to lift the stay was to move in the North Carolina Court (1) to amend the complaint in the North Carolina litigation to name as defendants all individual partners and senior principals of the Debtor during the period covering May 14, 1985 through April 17, 1987; and (2) to transfer venue of the North Carolina litigation against the principals, partners, and L & H to the United States District Court for the Southern District of New York. Reply Memorandum of Law in Support of PTL Class' Motion to Withdraw the Reference Dated October 7, 1991 ("PTL Reply") at 7. On this point, counsel for L & H stated at the hearing: "[T]hey have said that they think one forum should decide the issue, and we do too. It should be this Court....", *i.e.,* presumably, the Bankruptcy Court for the Southern District of New York. Stay Hearing Transcript at 20.

The Bankruptcy Court decided to reserve decision on PTL's motion to modify the

---

**1.** Amendments to the complaint are indicated in the amended complaint by capitalized, underlined letters. *See* N.C. Docket Sheet at 32.

**2.** On December 5, 1990, Judge McMillan dismissed PTL's federal and state securities fraud claims. In late December, 1990 or early January, 1991, the North Carolina jury returned a verdict of approximately $129 million against Bakker for common law fraud and found that Bakker and Deloitte were not liable on the other causes of action. N.C. Docket Sheet at 49.

stay until the determination of the instant motion. Stay Hearing Transcript at 25.

## II. *Mandatory Withdrawal*

PTL contends that the presence of the federal securities claims and RICO claims mandates withdrawal of the reference because 28 U.S.C. § 157(d) provides that a proceeding must be withdrawn if it "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." PTL Class Memorandum of Law in Support of Motion to Withdraw the Reference from the Bankruptcy Court Dated July 30, 1991 ("PTL Memo") at 4. In response, L & H argues that 1) PTL's objection is not timely; 2) PTL's securities claims were raised and rejected as a matter of law on December 5, 1990 in the North Carolina action, and that this decision collaterally estops PTL from raising the issue before this Court against L & H; 3) the North Carolina jury's eventual finding of no RICO liability against the remaining defendants in the North Carolina suit "eliminates the possibility that the Debtor could be found to have aided and abetted and/or conspired to commit such violations." Memorandum in Opposition of Motion of PTL Class to Withdraw the Reference From the Bankruptcy Court Dated September 11, 1991 ("L & H Opp.") at 3–4.

### A. Timeliness

L & H argues that PTL Class' motion to withdraw is premature because there is no "proceeding" in the Bankruptcy Court to be withdrawn pursuant to section 157(d) of title 28. L & H contends that no proceeding exists "unless and until an objection to [PTL Class' proof of claim] is filed [by L & H] ... pursuant to § 502(b) of the Bankruptcy Code.'" L & H Opp. at 7.

 It is generally true that there is no "proceeding" for purposes of a motion to withdraw a bankruptcy reference until a party in interest files an objection to the proof of claim submitted by a creditor under the Bankruptcy Code. *See, e.g., In re Chateaugay Corp.,* 104 B.R. 622, 625 (S.D.N.Y.1989). However, the instant case is distinguishable because L & H concedes that it will eventually either file an objection to the PTL Class' proof of claim or commence an estimation proceeding pursuant to 11 U.S.C. § 502(a). L & H Opp. at 7. The filing of an objection is less important to a determination of timeliness than a showing that the parties will be adversaries in bankruptcy court in the near future. *See In re Baldwin–United Corp.,* 57 B.R. 751, 754–55 (S.D.Ohio 1985) (it had been obvious that the debtor would contest movant's claim in bankruptcy court because the claim was for $700 million and the parties had already litigated the matter elsewhere; therefore, despite the lack of an objection, withdrawal motion should have occurred sooner). It would be a waste of judicial resources for this Court to dismiss this motion at this juncture, knowing full well, based on the prior litigation in the North Carolina action and the high financial stakes involved, that L & H will commence a "proceeding" against the PTL Class that will involve consideration of federal laws regulating interstate commerce.

### B. Collateral Estoppel

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action...." *Restatement Second of Judgments* (1981) § 27. The doctrine of collateral estoppel prevents only the relitigation of issues that were previously "raised, litigated, and *actually decided by a judgment* in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir.1991) *cert. denied* — U.S. —, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992) (emphasis added) (citing *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955)).

#### 1. *Securities Issues*

 For the purpose of this withdrawal of the reference motion, we find that Judge McMillan's December 5, 1990 order (*see* note 2, *supra*) collaterally estops us from considering the federal securities claims as

a basis to withdraw the reference. The parties do not dispute that the pending appeal of the North Carolina court's pretrial dismissal of the federal securities claims does not negate the collateral estoppel effect of Judge McMillan's December 5, 1990 order. Rather, the PTL Class merely notes that substantial securities law considerations exist in this case and that this Court should withdraw the reference as to the securities law claims and "stay their prosecution until the North Carolina district court's December 5 Order is reversed." Reply Memorandum of Law in Support of PTL Class' Motion to Withdraw the Reference ("PTL Reply") at 21. However, the "pendency of an appeal does not suspend the collateral estoppel effect of an otherwise final judgment" in federal practice unless *de novo* review is permitted on appeal. *Cerbone v. County of Westchester*, 508 F.Supp. 780, 785 (S.D.N.Y.1981) (Weinfeld, J.). Therefore, it would be inappropriate for this Court to withdraw the reference on the basis that the securities claims might resurface on appeal.

### 2. *Federal RICO Issues*

■ Collateral estoppel does not, however, bar the PTL Class from relitigating the issues of L & H's primary or conspiracy federal RICO liability. L & H submits a copy of the January 4, 1991 Judgment and Order filed in the North Carolina district court. Brandzel Afft., Exhibit B. The Judgment and Order incorporates the completed verdict sheet returned by the North Carolina jury in the case. The jury found that Bakker did not commit a primary violation of 18 U.S.C. §§ 1962(a)–(d) and that Taggart and Deloitte did not aid and abet Bakker's primary violations of RICO or conspire with Bakker to violate RICO. *Id.* However, the verdict sheet does not appear to have included a question or questions about L & H's primary or secondary RICO liability; the operation of the automatic stay as to L & H prevented the North Carolina Court from including questions as to L & H's liability. PTL further has not shown that the North Carolina court made any final judgments disposing of these particular issues. Under these circumstances, collateral estoppel does not apply to L & H's alleged primary and conspiracy liability under RICO.

■ However, the Court finds as a matter of law that the PTL Class is precluded from asserting its aiding and abetting claim against L & H because the North Carolina jury verdict found no RICO liability against any of the defendants still in the case. In order for a party to be found liable for aiding and abetting under RICO, there must first be a showing of a primary RICO violation by the party the defendant is alleged to have aided and abetted. *See Ag v. Sun*, 1990 WL 11537, *2–3, 1990 U.S. Dist. LEXIS 1438, *5 (S.D.N.Y.1990) (Elements of a cause of action for aiding and abetting RICO are the existence of a RICO violation, knowledge of the violation, and facts showing defendant's substantial assistance in the primary violation); *Dept. of Economic Dev. v. Arthur Andersen & Co.*, 683 F.Supp. 1463, 1482–1483 (S.D.N.Y.1988) (same). The North Carolina jury's failure to find a primary RICO violation by someone other than L & H thus precludes any finding against L & H of aiding and abetting liability.

### C. Existence of Substantial and Material Consideration of Non–Bankruptcy Code Federal Law

It is well settled that withdrawal is only required where the movant shows that a resolution of the proceeding necessitates "substantial and material consideration" of non-bankruptcy code federal statutes. *In re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986). Where a proceeding will involve only a "'straightforward application of a federal statute to a particular set of facts[ ]'... [rather than] 'issues requiring significant *interpretation* of federal laws that the Congress would have intended to have decided by a district judge rather than a bankruptcy judge,'" withdrawal is not mandatory. *In re Chateaugay*, 86 B.R. 33, 37 (S.D.N.Y.1987) (emphasis in original) (quoting *In re Johns–Manville*, 63 B.R. at 602). Section 157(d) is to be narrowly interpreted so that it is not utilized as an "escape hatch through which most

**115**

bankruptcy matters [could] be removed to a district court." *In re Chateaugay*, 86 B.R. at 36 (quoting statement of Rep. Kramer, 130 Cong.Rec. H1850 (March 21, 1984)).

We agree with those courts that have found that the presence of RICO claims does not necessarily dictate withdrawal of the reference. *See In re Cinmar*, 1991 WL 5893, *2, 1991 U.S. Dist. LEXIS 505, *5 (D.N.J.1991) ("the mere existence of a RICO claim ... does not mandate withdrawal."); *In re Auto Specialties Mfg. Co.*, 134 B.R. 227, 228–29 (W.D.Mich. 1990) (absent showing that RICO claim presented issues of first impression or that simultaneous construction of RICO and Title 11, withdrawal was not mandatory); *In re Adelphi Institute, Inc.*, 112 B.R. 534, 537–38 (S.D.N.Y.1990) (same). The facts and law in each case dictate whether substantial interpretation is necessary, and we do not find that the facts and law in this case are such that substantial interpretation of RICO will occur.

The application of federal RICO law to L & H will not involve novel issues, much less "substantial" interpretation of the RICO statute. Liability under RICO for an organization such as an accounting firm is recognized in the Second Circuit, *see generally United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980) *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), but is not recognized in certain other circuits. Nevertheless, we fail to understand why discord among the circuits of itself renders a bankruptcy court's consideration "substantial" when only one circuit's law can apply. Moreover, contrary

to PTL's assertion, reliance—a relatively straightforward concept in any event—is an element only of mail fraud and wire fraud-based RICO causes of action[3], and PTL does not allege predicate acts of wire fraud or mail fraud. We therefore reject PTL's calculating attempt to muddy the waters as to the theories underlying its own lawsuit.

In any event, if any interpretation of RICO will take place, much of it will inevitably rely on the North Carolina Court's interpretation of RICO with respect to L & H that already took place in the motion practice before that Court. The 1989 North Carolina cross-summary judgment motions ruled on by Judge McMillan presumably included for consideration the predicate acts involving transportation of stolen property, the sale and receipt of stolen property, and domestic money laundering. Thus, the Congressional purpose of utilizing a federal district court to interpret a federal, non–Bankruptcy statute already has been largely fulfilled.

Lastly, we note that several courts that decided to withdraw the reference from the Bankruptcy Court in cases that involved RICO claims have rested their decisions on the large number of RICO claims or the presence of other federal laws in the action[4]. In this case, RICO is the only federal law basis for withdrawal. Moreover, many of the RICO causes of action have been effectively dismissed. The securities-based RICO causes of action are no longer present because of Judge McMillan's December 5, 1990 dismissal decision[5]. The aiding and abetting RICO violation causes of action likewise no longer remain. *See* Part II.B.2, *supra*. Thus, the only remain-

3. *See, e.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990); *Ferndale Corp. v. Schulman Urban Dev. Associates*, 758 F.Supp. 861, 866 n. 8 (S.D.N.Y.1990).

4. *In re IQ Telecommunications, Inc.*, 70 B.R. 742, 745 (N.D.Ill.1987) (length of relevant count of complaint and number of defendants named demonstrate that RICO will be a substantial part of the allegations against the defendants and withdrawal is therefore appropriate); *Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 731–32 (D.Kan.1986) (plaintiff's claim of trademark infringement, along with debtors' anti-

trust & RICO counterclaims, entails material and substantial consideration of non-Code federal law).

5. The parties have not briefed the Court on whether the pendency of an appeal of the dismissal of federal and state law-based securities claims by a federal court alters the collateral estoppel effect on the dismissal of state law-based securities claims. We will assume for the purposes of this motion that PTL is collaterally estopped from raising state law-based securities claims, or RICO causes of actions based on state law-based securities claims, because of Judge McMillan's December 5, 1990 order.

ing RICO causes of action appear to be those based on the transportation of stolen property, the sale or receipt of stolen property, domestic money laundering, mail fraud, and wire fraud.

We acknowledge the existence of unsettled questions about the scope of civil RICO. However, these factors do not affect the case at hand. PTL has simply failed to show that this case involves anything other than a routine application of RICO law. Accordingly, we find no basis for mandatory withdrawal of the reference.

### III. *Permissive Withdrawal and PTL's Modification of Stay Motion Pending Before the Bankruptcy Court*

■ The goals of judicial economy and expeditious determinations of cases would not be served by the consideration of PTL's claim by a federal district court wholly unfamiliar with the case. Accordingly, we deny PTL's request for permissive withdrawal.

■ Indeed, we observe that the history of this litigation would warrant the Bankruptcy Court's lifting the stay over the PTL–L & H litigation for the explicit purpose of allowing the entire case to be heard and concluded before Judge McMillan in North Carolina, with the express order that the case not be transferred from the district court in North Carolina. Judgment need not, of course, be immediately entered in North Carolina; rather, the jury would render special interrogatories at the end of the trial for the use of the Bankruptcy Court. *See In re Hunter*, 32 B.R. 140, 142 (Bankr.S.D.Fla.1983) (so as to avoid duplicative litigation, bankruptcy court lifts stay in order that litigation may go forward in district court; record of dis-

trict court should include findings of fact by judge or jury answers to special interrogatories) [6].

11 U.S.C. § 362(d) states that a court may terminate, annul, modify, or condition a stay for "cause." The legislative history of 11 U.S.C. § 362(d) states

> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. As noted above, *a desire to permit an action to proceed to completion in another tribunal may provide another cause....* The facts of each request will determine whether relief is appropriate under the circumstances. H.R.Rep. No. 595, 95th Cong., 2d Sess. 343–44, *reprinted in* 1978 U.S.Cong. & Admin.News 5787, 6300.

■ The decision whether to lift the automatic stay rests largely with the discretion of the bankruptcy judge. *In re Sonnax Industries*, 907 F.2d 1280, 1286 (2d Cir.1990) (quoting *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir.1982)). The Second Circuit has recently identified a series of factors that courts should consider in determining whether to modify a stay to allow a suit in another proceeding to go forward. *In re Sonnax*, 907 F.2d at 1286. The factors that apply in this case most clearly are 1) the interests of judicial economy and the expeditious and economical resolution of litigation; and 2) the parties' readiness for trial in the other proceeding. Judge McMillan's extensive commitment to and intimate knowledge of the case [7] and the fact that the parties were ready a year ago to proceed, and indeed did proceed, before Judge McMillan weigh

---

**6.** In light of the 1986 amendment to 11 U.S.C. § 105(a), we further find that, if necessary, the Bankruptcy Court could *sua sponte* modify the automatic stay in the way outlined above. The second sentence of the amended version of 11 U.S.C. § 105(a) states:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any de-

termination necessary or appropriate to enforce or implement court orders or rules, *or to prevent an abuse of process.* (emphasis added).

*See also In re Peter Bellucci*, 119 B.R. 763 (Bankr.E.D.Cal.1990).

**7.** Indeed, considering Judge McMillan's familiarity with the parties, we doubt that litigation would be more expensive were trial to be held in North Carolina instead of New York.

heavily in favor of allowing the case to go forward in North Carolina[8].

The astonishingly circuitous path of this litigation, which is far from complete if the parties have their way, is troublesome. We are convinced that the desire of both parties to maneuver the case either into a district or bankruptcy court in the Southern District of New York is nothing more than a brazen attempt at forum shopping at the expense of the time and effort that Judge McMillan has devoted to this case. It would not surprise us to find that 1) PTL's stated desire to move the action to New York is an attempt to find a more sympathetic audience than the North Carolina jury that ruled against PTL with respect to the other defendants, and 2) L & H is reluctant to again show itself before Judge McMillan, who, understandably, was not amused by the timing with which L & H decided to declare bankruptcy. Nevertheless, such cynical manipulation of the federal judicial system must not be condoned.

\* \* \* \* \* \*

In sum, we deny the withdrawal of the reference motion. The case is remanded to the Bankruptcy Court.

SO ORDERED.

---

**8.** *In re Sonnax* and its progeny neither state that a court need assign equal weight to each factor nor mandate that a court must discuss each factor in rendering its decision. (Indeed, *In re Sonnax* affirms the lower court's decision based on only four factors.) *In re Sonnax*, 907 F.2d at 1286; therefore a determination to lift the stay on the above two bases would be sufficient. Furthermore, we note that in at least one case, decided before *In re Sonnax*, a Court has devised a method for lifting the stay that would nullify most of the factors that might otherwise weigh against lifting the stay: "The record of the [lawsuit in the District Court] should include findings of fact by the District Court or the answers by a jury to special interrogatories...." *In re Hunter*, 32 B.R. at 142. Were the North Carolina Court, after a jury trial, to submit to the Bankruptcy Court the answers to the jury's special interrogatories and refrain from entering judgment against L & H should one be necessary, such an outcome could not prejudice L & H or the other parties involved in the bankruptcy action.