NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-14-1134-DKiTa |
| | ) | |
| MICHELE RENEE CLARK, | ) | Bk. No. 10-41323-RN |
| | ) | |
| Debtor. | ) | Adv. Proc. No. 10-03035-RN |
| _____ | ) | |
| ESTATE OF KIMBERLY KEMPTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| MICHELE RENEE CLARK, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on October 23, 2014
at Malibu, CA

Filed - November 4, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard Neiter, Bankruptcy Judge, Presiding

Appearances:    Charles G. Kinney argued for the appellant; Eric Chomsky argued for the appellee.

Before:  DUNN, KIRSCHER, and TAYLOR, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Judith Kempton ("Appellant"), as personal representative of the estate of Kimberly Kempton ("Ms. Kempton"), appeals the bankruptcy court's order ("Dismissal Order") reopening and dismissing Ms. Kempton's adversary proceeding ("Adversary Proceeding") against chapter 7 debtor Michele R. Clark ("Ms. Clark"), based on the claim preclusive effect of the state court's dismissal with prejudice of Ms. Kempton's underlying state law claims.[2] As discussed in greater detail infra, we consider this appeal as encompassing certain interlocutory orders entered by the bankruptcy court in the adversary proceeding prior to its entry of the Dismissal Order, but we do not consider orders entered by the bankruptcy court in Ms. Clark's main chapter 7 case or orders entered in independent state court proceedings. We AFFIRM.

## I. FACTUAL BACKGROUND

Both the Appellant and Ms. Clark have filed excerpts of record in this appeal, but their excerpts fail to include a number of documents filed in the Adversary Proceeding that are material to our disposition of this appeal.[3] We have exercised

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Ms. Clark argues in her answering brief that we should summarily affirm the bankruptcy court based on deficiencies in Appellant's opening brief and excerpts of record and violations by Appellant of the rules of appellate procedure. Appellant clearly could have done better, but we certainly have seen worse.

(continued...)

-2-

our discretion to review the bankruptcy court's Adversary Proceeding and main case dockets and the documents on record therein to assist us in our consideration of this appeal. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). The following factual narrative relies on information gleaned from that review as well as from the parties' excerpts of record, but the narrative is limited to factual information relevant to this appeal.[4]

A.   Pre-Bankruptcy Disputes

   In 2005, Ms. Kempton and Charles G. Kinney, an attorney who represented Ms. Kempton before the bankruptcy court and is one of the attorneys representing Appellant in this appeal ("Mr. Kinney"), purchased a residence on Fernwood Avenue in Los

---

[3](...continued)
"It is too late in the day and entirely contrary to the spirit of the [Civil Rules] for decisions on the merits to be avoided on the basis of such mere technicalities." Foman v. Davis, 371 U.S. 178, 181 (1962). Accordingly, we determine in our discretion to proceed to consider the merits of Appellant's appeal.

[4]   The parties have filed multiple motions to augment the record and/or for judicial notice of various documents filed in California state court proceedings and supplemental authorities ("Motions for Judicial Notice"). We have considered the supplemental authorities submitted to the extent that they relate to the issues we are deciding in this appeal. As for the documents, primarily orders, from state court proceedings, we have considered such documents to the extent they were presented to the bankruptcy court in the Adversary Proceeding, as discussed in the following factual narrative, but otherwise deny the Motions for Judicial Notice, as not presenting documents relevant for our consideration in this appeal.

Angeles ("Fernwood Property") from Ms. Clark. Mr. Kinney negotiated the Fernwood Property purchase contract for himself and Ms. Kempton.

Ms. Kempton and Mr. Kinney subsequently alleged that Ms. Clark "intentionally, willfully, and maliciously concealed many adverse material facts [about the Fernwood Property] during the negotiations . . . , all of which were required to be disclosed under California law." Ms. Kempton and Mr. Kinney eventually sued Ms. Clark and her real estate brokers for "fraud, nondisclosure, and rescission" in California state court (the "State Court Litigation"). Actually, Mr. Kinney filed and pursued a number of lawsuits with regard to the purchase of the Fernwood Property, described as follows by the California Court of Appeal:

> This unusual case involves Charles G. Kinney, a lawyer who was declared a vexatious litigant in 2008 in Los Angeles Superior Court. . . . Despite his status as a vexatious litigant, Kinney has pursued a persistent and obsessive campaign of litigation terror against his neighbors and the City of Los Angeles. Kinney has evaded the effect of the 2008 prefiling order by enlisting a cohort, Kimberly Jean Kempton, to stand in his stead as plaintiff and appellant, because Kinney can no longer represent himself in litigation without prior court approval. . . .
> With Kinney at the helm, Kempton has pursued six lawsuits in Los Angeles Superior Court over the last five years. All of the lawsuits relate to the [Fernwood Property]. [Ms. Kempton and Mr. Kinney] have continually – and resoundingly – lost their cases in the trial courts. As one trial judge aptly wrote in a statement of decision, Kinney is "a relentless bully" who displays "terrifying arrogance" by filing "baseless litigation against the City and its citizens."
> After losing in the trial courts, [Ms. Kempton and Mr. Kinney] have repeatedly appealed. Since 2007, they have lost 13 appeals, had two appeals involuntarily dismissed and had a writ petition summarily denied. We conclude that Attorney Kinney is using [Ms.] Kempton as his proxy or puppet in order to continue his career as a vexatious litigant. This opinion and order will

-4-

serve to curb that behavior. In re Finding of Charles G. Kinney, as a Vexatous Litigant, 201 Cal.App.4th 951, 953 (2011); Adversary Proceeding Docket No. 12, Exhibit A, at 3.[5]

In part as a result of the litigation barrage from Mr. Kinney and Ms. Kempton, Ms. Clark sought relief in chapter 7 on August 6, 2010, in Case No. 2:10-bk-41323-RN (the "Main Case").

B. The Adversary Proceeding

On November 8, 2010, Ms. Kempton filed the Adversary Proceeding, Case No. 2:10-ap-03035. In the Adversary Proceeding complaint, Ms. Kempton asserted exception to discharge claims under §§ 523(a)(2)(A) and (6), based on claims made in the stayed

---

[5] The California Court of Appeal went on to conclude:

Kinney has brought a multitude of cases – and lost every one of them – in two different counties, all relating to the properties he owns. When authorized, the courts have ordered him to reimburse his opponents' attorney fees. Despite paying tens of thousands of dollars to his opponents for the attorney fees that they needlessly incurred to fight him off, Kinney is undeterred. He continues to sue and to appeal, wasting vast quantities of judicial resources and taxpayer money to process his absurd and unsupported claims. Kinney's conduct must be stopped, immediately.

Id. at 960; Adversary Proceeding Docket No. 12, Exhibit A, at 5. The Court of Appeal's Opinion served "as a prefiling order prohibiting Kinney from filing any new litigation – either in his own name or in the name of [Ms. Kempton] – in the courts of [California] without first obtaining leave of the presiding judge." Id. at 960-61; Adversary Proceeding Docket No. 12, Exhibit A, at 6.

-5-

State Court Litigation. Ms. Clark filed an answer to the complaint on December 16, 2010.

The bankruptcy court held a case management conference in the Adversary Proceeding on January 20, 2011. We do not know what was discussed at the case management conference because we have not been provided with a transcript. However, the bankruptcy court entered an Order re: Case Management ("Case Management Order") on March 3, 2011, staying the Adversary Proceeding pending the outcome of the State Court Litigation. The Case Management Order further provided:

> 2. [Ms.] Clark must appear and defend in the [State Court Litigation], which amounts to relief from the bankruptcy automatic stay as to her, subject to the Bankruptcy Court's review of, and decision regarding, any judgment entered by the State Court against [Ms.] Clark before any enforcement of that State Court judgment can occur.
> 3. If such a judgment against [Ms.] Clark is entered in the State Court [Litigation], enforcement of said judgment is still subject to the stay of 11 USC 362 and will require a further order of this Court.

Over a year later, on April 27, 2012, Ms. Kempton moved to vacate ("Motion to Vacate") the Case Management Order sending the State Court Litigation back to the California state court, arguing, among other things, that Ms. Clark's attorneys might succeed in having the State Court Litigation dismissed "using State Court laws." Ms. Clark opposed the Motion to Vacate, and Ms. Kempton replied to Ms. Clark's opposition.

In fact, on or about May 21, 2012, the California State Court entered an order ("Security Order") in the State Court Litigation in response to Ms. Clark's motion as follows:

> IT IS HEREBY ORDERED . . . that Plaintiff Kempton is declared a Vexatious Litigant in this litigation because she is a strawman for Kinney, and/or Kinney is

-6-

using her as his puppet or proxy in this litigation. The Court bases this finding on In re Kinney (2011) 201 Cal.App.4th 951, and Kempton's failure to submit a declaration disputing this finding. In light of the prior findings that Kinney is a vexatious litigant under CCP § 391.1, Kempton is bound by this determination in this case. Kempton shall post security in the sum of $185,000 no later than 6/4, 2012, for Clark's attorneys' fees and other defense expenses in the event judgment is against Plaintiff. If the bond is not posted by this date, the case shall be dismissed.

Adversary Proceeding Docket No. 12.

On June 13, 2012, Ms. Kempton filed a motion for a temporary restraining order in the Adversary Proceeding, seeking to vacate the Case Management Order (and, from Ms. Kempton's perspective, hoping to void any intervening orders entered by the California state court in the State Court Litigation) and to set a trial date in the Adversary Proceeding. In her motion, she claimed that irreparable harm would result to her if the State Court Litigation were dismissed based on the requirements of the Security Order.

On June 15, 2012, the California state court entered an order ("State Court Litigation Dismissal Order") dismissing the State Court Litigation with prejudice based upon Ms. Kempton's failure to satisfy the requirements of the Security Order. There is no evidence in the record before us that Ms. Kempton ever appealed the State Court Litigation Dismissal Order. Ms. Clark has submitted in her excerpts of record a Remittitur and Order from the California Court of Appeal, entered December 31, 2012 and September 13, 2012 respectively, that evidence denial of Mr. Kinney's appeals from "vexatious litigant" and prefiling orders entered against him. On April 29, 2013, the United States

Supreme Court denied Mr. Kinney's petition for writ of certiorari, which, among other things, denied Mr. Kinney's request for a trial in federal court of Ms. Kempton's claims in the Adversary Proceeding. See Adversary Proceeding Docket No. 54, at 6. The State Court Litigation Dismissal Order is final for California state law purposes.

The Motion to Vacate was heard by the bankruptcy court on June 19, 2012. Again, we have not been provided with a transcript; so, we do not know what was discussed at the June 19, 2012 hearing. However, the bankruptcy court posted a tentative decision in advance of the hearing that was incorporated in and attached to its order denying the Motion to Vacate, entered on July 30, 2012 (the "July 30, 2012 Order").

In its tentative decision, the bankruptcy court indicated that it was inclined to deny the Motion to Vacate for a number of reasons, including the following: 1) If the State Court Litigation were dismissed for failure to post the required security bond, such dismissal "will be by Plaintiff's [Ms. Kempton's] own doing" in light of the California state court's holding, "consistent with the California Court of Appeal and Supreme Court," that "Mr. Kinney and/or Ms. Kempton are vexatious litigants." In such circumstances, the bankruptcy court would "give full faith and credit to the [California state court's] decision to dismiss the case, and the [Adversary Proceeding] will also be dismissed." 2) If the State Court Litigation were not dismissed, the bankruptcy court had already decided that the State Court Litigation should continue in California state court because the State Court Litigation

-8-

involves State law issues and non-debtor parties (such as the Real Estate Broker); the State law claims can be most expeditiously tried in State Court; they can be tried by a jury in that Court but not in Bankruptcy Court . . .; the litigation over the subject real estate transaction has been pending in the State Court since 2006; and this Court sees no reason to vacate the [Case Management Order].

On December 6, 2012, the Adversary Proceeding was closed administratively. On December 17, 2012, Ms. Kempton moved to reopen the Adversary Proceeding, asserting, among other reasons, that the "debt" owed by Ms. Clark to Ms. Kempton "was never determined by any court." In his Declaration filed in support of the motion to reopen, Mr. Kinney advised that he had filed a motion in the California state court to overturn the Security Order. Thereafter, the Adversary Proceeding was reopened, as closed by inadvertent clerical error, by order entered on December 20, 2012.

On October 4, 2013, the Adversary Proceeding again was closed administratively, in conjunction with the closing of the Main Case, since "it appears that no further matters are pending that require this [Adversary Proceeding] remain open." On November 4, 2013, the Appellant [Ms. Kempton apparently was now deceased] moved to reopen the Adversary Proceeding, supported by the Declaration of Mr. Kinney. A hearing ("Hearing") was set on the motion to reopen for March 13, 2014. Ms. Clark opposed the motion to reopen, supported by the Declaration of her counsel. The Appellant filed a reply on March 6, 2014.

The bankruptcy court posted a tentative ruling in advance of the Hearing. At the Hearing, after hearing argument from counsel for the Appellant and Ms. Clark, the bankruptcy court stated that

1) it would reopen the Adversary Proceeding because it was not properly closed on October 4, 2013, and 2) it then would dismiss the Adversary Proceeding "because the underlying fraud action was dismissed in State Court." Tr. of March 13, 2014 hr'g, 8:14-17; 11:7-11.

On March 21, 2014, the bankruptcy court entered the Dismissal Order, reopening and dismissing the Adversary Proceeding. In the Dismissal Order, the bankruptcy court incorporated all but the last two sentences of its tentative ruling. In its tentative ruling, the bankruptcy court noted that the October 4, 2013 closing of the Adversary Proceeding was inappropriate procedurally in that none of the reasons stated on the closing docket entry applied. Accordingly, the bankruptcy court would reopen the Adversary Proceeding to correct the clerical error in closing it. However, getting to the substance of the matter, the bankruptcy court noted that, "[t]he dismissal of the [State Court Litigation] is final and no appeal of the dismissal was taken." Dismissal Order, at 4. "[I]n view of the final non-appealable order in the state court dismissing the [State Court Litigation], there appears to be no basis for the Plaintiff's nondischargeability claim but an order to that effect needs to be entered in order to dispose of the [Adversary Proceeding] properly." Dismissal Order, at 6.

The Appellant filed a timely Notice of Appeal on March 24, 2014.[6]

--------

[6]  In her Answering Brief, Ms. Clark argues that this appeal
(continued...)

-10-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

In the Statement of Issues filed with the bankruptcy court (Adversary Proceeding Docket No. 73) and in her Opening Brief, Appellant lists eighteen issues for consideration in this appeal. Some of the listed issues relate to proceedings and orders in the Main Case, in California state courts and in federal district court that are not properly before us in this appeal, as discussed more fully infra. Otherwise, we distill the issues before us in this appeal down to the following two:

1) Did the bankruptcy court abuse its discretion in staying the Adversary Proceeding pending the outcome of the State Court Litigation and in granting relief from stay so that the State Court Litigation could proceed?

2) Did the bankruptcy court err in dismissing the Adversary Proceeding based on its conclusion that no debt was owed by Ms. Clark to Ms. Kempton and the Appellant, as Ms. Kempton's

---

[6](...continued)
is untimely for some or all purposes, as no Notice of Appeal was filed within fourteen days following the administrative closing of the Adversary Proceeding on October 4, 2013, pursuant to the requirements of Rule 8002(a). Since we agree with the bankruptcy court that the closing of the Adversary Proceeding on October 4, 2013 was the result of clerical error, the operative order was the Dismissal Order, entered on March 21, 2014, and the Notice of Appeal filed in behalf of the Appellant three days later was timely.

-11-

successor in interest?

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's decision to dismiss an adversary proceeding on the pleadings de novo. Henry A. v. Willden, 678 F.3d 991, 998 (9th Cir. 2012). Likewise, we review a bankruptcy court's summary judgment determinations and its interpretations of bankruptcy and state law de novo. Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011) (summary judgment); Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009) (interpretation of the Bankruptcy Code and state law). De novo means that we consider a matter anew, as if no decision previously had been rendered. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009).

We review a bankruptcy court's case management decisions for abuse of discretion. GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc., 650 F.3d 1257, 1262 (9th Cir. 2011); Rivera v. Orange Cnty Probation Dept. (In re Rivera), 511 B.R. 643, 648 (9th Cir. BAP 2014). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its fact findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm a decision of the bankruptcy court on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

A. Main Case Proceedings and Orders

We begin our analysis by discussing some matters that are

-12-

not appropriately considered in this appeal. Rule 8001 sets forth the procedure for appealing bankruptcy court orders and judgments. Rule 8001(a), which is adapted from Rule 3(a) of the Federal Rules of Appellate Procedure ("FRAP"), provides that:

> An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002 . . . . The notice of appeal shall (1) conform substantially to the appropriate Official Form, . . . .

The appropriate Official Form is Form 17, which provides in its initial paragraph as follows:

> _____, the plaintiff [*or* defendant *or* other party] appeals under 28 U.S.C. § 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge (describe) entered in this adversary proceeding [*or other proceeding, describe type*] on the ___ day of (month), (year).

Accordingly, the appellant is required to designate in the notice of appeal the specific judgment or order appealed from in the particular concerned case.

In the Notice of Appeal filed by Appellant herein, Appellant states that she is appealing the Dismissal Order, copies of which are attached to the Notice of Appeal.[7] The Notice of Appeal does not identify any other order(s) that the Appellant seeks to appeal.

We discuss interlocutory orders in the Adversary Proceeding that merged in the final Dismissal Order <u>infra</u>, but proceedings

---

[7] The Dismissal Order apparently was docketed both as an order reopening the Adversary Proceeding (<u>see</u> Adversary Proceeding Docket No. 62) and as an order dismissing the Adversary Proceeding (<u>see</u> Adversary Proceeding Docket No. 63).

-13-

and orders in the Main Case are fundamentally different in that the Main Case and the Adversary Proceeding are <u>not</u> the same cases. "An adversary proceeding is . . . part of the bankruptcy but it is not the bankruptcy case itself, as illustrated by the fact that the dismissal of an adversary proceeding is an appealable final order even though the bankruptcy [main] case continues." <u>United States v. Peel</u>, 595 F.3d 763, 768-69 (7th Cir. 2010), <u>cert. denied</u>, <u>Peel v. United States</u>, 131 S.Ct. 994 (2011) (citing <u>Marchiando v. Illinois (In re Marchiando)</u>, 13 F.3d 1111, 1113-14 (7th Cir. 1994)). The Appellant did not designate or identify any order(s) in the Main Case that she sought to appeal in her Notice of Appeal.

A mistake in designating an order or judgment that the appellant seeks to appeal in a notice of appeal is not necessarily fatal to an appeal "so long as the intent to appeal a specific judgment can be fairly inferred from the notice and appellee is not misled by the mistake." <u>Kelly v. United States</u>, 789 F.2d 94, 96 n.3 (1st Cir. 1986). <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178 (1962). "[I]f a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule <u>if the litigant's action is the functional equivalent of what the rule requires</u>." <u>Torres v. Oakland Scavenger Co.</u>, 487 U.S. 312, 316-17 (1988) (emphasis added). However, that liberal principle of construction is not without limits and does not excuse noncompliance with the rules of appellate procedure. <u>See</u> <u>Smith v. Barry</u>, 502 U.S. 244, 248 (1992). "[A]lthough a court may construe [FRAP] liberally in

-14-

determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." Torres v. Oakland Scavenger Co., 487 U.S. at 317.

Nothing in the Notice of Appeal here gives any indication that Appellant sought to appeal any order in the Main Case. Since the Main Case was closed on October 4, 2013, the deadline for filing a notice of appeal with respect to any order in the Main Case under Rule 8002 is long past. Nothing in the record before us tends to establish that the Appellant or her predecessor in interest ever filed a notice of appeal with respect to any order entered in the Main Case. Accordingly, we do not consider any issues raised by Appellant as to the actions of the chapter 7 trustee or Ms. Clark's attorneys in the Main Case and specifically, any abandonment order(s) entered by the bankruptcy court in the Main Case as encompassed by this appeal. See, e.g., Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 6 (1st Cir. 2003).

B.   The Case Management Order

Pulling together the threads of Appellant's wide-ranging arguments in her opening brief presents a challenge, but we interpret one argument submitted by Appellant as follows: Lifting the automatic stay of § 362 in the Case Management Order was procedurally improper because the requirements of § 362(d) were not followed. See Appellant's Opening Brief, at 17 and 24. In relevant part, § 362(d) provides that in appropriate circumstances, the automatic stay can be lifted "[o]n request of a party in interest and after notice and a hearing."

-15-

Appellant did not designate the Case Management Order in her Notice of Appeal as an order that she was appealing. However, in her Statement of Issues, issue number two is stated as: "Whether the US Bankruptcy Court can transfer KEMPTON's adversary proceeding to the State Court for a determination by the State Court of any 'debt' owed by CLARK to KEMPTON on March 3, 2011, without any motion for relief from stay or similar motion to allow such a transfer to State Court under 11 U.S.C. Sec. 362?" See Adversary Proceeding Docket No. 73, at 3. The Case Management Order was an interlocutory order in the Adversary Proceeding that without leave, could not be appealed until a final judgment, i.e., the Dismissal Order, was entered. See, e.g., 28 U.S.C. § 158(a); Baldwin v. Redwood City, 540 F.2d 1360, 1364 (9th Cir. 1976); Adamian v. Jacobsen, 523 F.2d 929, 931 (9th Cir. 1975). Since Appellant manifested a clear intent to appeal the interlocutory Case Management Order in her Statement of Issues and argued that lifting the stay in the Case Management Order was not proper procedurally in her opening brief, to which argument Ms. Clark responded in her answering brief (see Appellee's Answering Brief, at 11 and 15-18), we conclude that it is appropriate to consider the Case Management Order in this appeal. See Foman v. Davis, 371 U.S. at 181.

However, considering the entire record before us (and what is not before us) in this appeal, we conclude that we must affirm the Case Management Order for the following reasons:

1. "Where there is a clearly inadequate record on appeal, we have 'little choice' but to affirm." Hardcastle v. Greer (In re Hardcastle), 2013 WL 5944042, at *9 (9th Cir. BAP Nov. 7,

-16-

2013) (emphasis in original), citing Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187, 1191 (9th Cir. 2003). As noted above, while Appellant included the Case Management Order itself in her excerpts of record, we do not have a transcript of the case management conference that generated the order. So, we do not know what was discussed at the case management conference or what rationale the bankruptcy court articulated in determining to issue the Case Management Order. In light of Appellant's failure to provide us with a transcript of the case management conference, we are entitled to presume that the Appellant does not think that a transcript would be helpful to her in this appeal. See Gionis v. Wayne (In re Gionis), 170 B.R. 675, 681 (9th Cir. BAP 1994).

2. "As a general rule issues which have not been raised in the trial court will not be reviewed on appeal." Scott v. Pacific Maritime Ass'n, 695 F.2d 1199, 1203 (9th Cir. 1983). "Ordinarily, if an issue is not raised before the trial court, it will not be considered on appeal and will be deemed waived." Levesque v. Shapiro (In re Levesque), 473 B.R. 331, 336 (9th Cir. BAP 2012). Beverly Cmty. Hosp. Ass'n v. Belshe, 132 F.3d 1259, 1267 (9th Cir. 1997) ("[B]efore an appellate court will consider . . . an issue, ordinarily the argument must have been raised sufficiently for the trial court to rule on it.").

We have reviewed the documents on the Adversary Proceeding docket very carefully, and we do not find that Appellant or Ms. Kempton ever argued to the bankruptcy court that the Case Management Order was improperly entered because the bankruptcy court lifted the § 362 stay sua sponte to allow the State Court

-17-

Litigation to proceed. The only reference to this issue that we have been able to find in pleadings by Ms. Kempton or the Appellant in the Adversary Proceeding is the following statement in the "History" section of Appellant's reply pleading with respect to her motion to reopen the Adversary Proceeding: "This Court at a case management conference for the [Adversary Proceeding] ordered CLARK to 'appear and defend' in a 2007 State Court fraud case on March 3, 2011 without any party requesting such relief (e.g. from the automatic stay) under 11 U.S.C. Sec. 362." See Adversary Proceeding Docket No. 61, at 2 (emphasis in original). That document was filed more than two years after the Case Management Order was entered. No argument that the Case Management Order was improper because no party had moved in advance for relief from the automatic stay to allow the State Court Litigation to proceed was made by Appellant's counsel at the Hearing.

3. As to the substance of Appellant's argument, the Case Management Order documents decisions of the bankruptcy court made at the case management conference in January 2011. As we noted *supra*, case management decisions are reviewed for abuse of discretion. GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc., 650 F.3d at 1262; In re Rivera, 511 B.R. at 648.

Rule 7016 makes Civil Rule 16 applicable in adversary proceedings in bankruptcy. Civil Rule 16(a) states the purposes for a pretrial or case management conference as follows:

> In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:
> (1) expediting disposition of the action;
> (2) establishing early and continuing control so

-18-

                    that the case will not be protracted because of
                    lack of management;
                    (3) discouraging wasteful pretrial activities;
                    (4) improving the quality of the trial through
                    more thorough preparation; and
                    (5) facilitating settlement.

Although our review is hampered by the absence of a transcript of the case management conference, there are indications in the Adversary Proceeding record as to the reasoning behind the bankruptcy court's decision to stay the Adversary Proceeding until the underlying State Court Litigation was resolved.

     In the Motion to Vacate, counsel for Ms. Kempton noted that "this Court expected a 'trial' to occur in State Court but then come back to this Court for 'judgment' with required findings and conclusions [to benefit CLARK so she would not have to go through 2 trials in pro per]." See Adversary Proceeding Docket No. 6, at 2. In its tentative decision incorporated in the July 30, 2012 Order, the bankruptcy court further noted that it already had decided (presumably at the case management conference) that the State Court Litigation should continue to a conclusion in the California state court because the State Court Litigation

                    involves State law issues and non-debtor parties (such
                    as the Real Estate Broker); the State law claims can be
                    most expeditiously tried in State Court; they can be
                    tried to a jury in that Court but not in Bankruptcy
                    Court . . .; the litigation over the subject real
                    estate transaction has been pending in the State Court
                    since 2006 . . . .

     Contrary to Appellant's argument, there is authority that a bankruptcy court can lift the automatic stay of § 362 sua sponte in appropriate circumstances. Section 105(a) provides that,

                    The [bankruptcy] court may issue any order, process, or
                    judgment that is necessary or appropriate to carry out
                    the provisions of this title. No provision of this

-19-

title providing for the raising of an issue by a party in interest shall be construed to preclude the [bankruptcy] court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105(a) has been interpreted as allowing a bankruptcy court to lift the automatic stay sua sponte to allow related litigation to proceed in another court. See, e.g., In re Laventhol & Horwath, 139 B.R. 109, 116 and n.6 (Bankr. S.D.N.Y. 1992); Bellucci v. Swift (In re Bellucci), 119 B.R. 763, 778-79 (Bankr. E.D. Cal. 1990). See also In re Henderson, 395 B.R. 893, 899 (Bankr. D.S.C. 2008); Harris v. Margaretten (In re Harris), 203 B.R. 46, 50 n.1 (Bankr. E.D. Va. 1994). Cf. Case Management Manual for United States Bankruptcy Judges 73 (Fed. Judicial Center, 2d ed. 2012) ("From a practical standpoint, an order granting abstention should include a provision granting relief from the automatic stay to permit the matter to proceed in the appropriate forum.").

In these circumstances, we do not perceive an abuse of discretion in the bankruptcy court's decision to lift the automatic stay of § 362 to allow the State Court Litigation to proceed in the California state courts prior to moving forward with the Adversary Proceeding, and we conclude that the bankruptcy court did not err in entering the Case Management Order.[8]

---

[8] In her reply brief, Appellant includes the July 30, 2012 Order among the orders to which her Notice of Appeal might relate (see Appellant's Reply Brief, at 10). However, she does not

(continued...)

-20-

C.  The State Court Litigation

In light of our conclusion that the bankruptcy court did not abuse its discretion in lifting the automatic stay to allow the State Court Litigation to proceed, we do not perceive that we have any authority to review, let alone reverse, subsequent orders and decisions of the California state courts in the State Court Litigation.  Under the Full Faith and Credit Act, implementing the Constitution's Full Faith and Credit Clause, we are required to accord the decisions of state courts "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738; Migra v. Warren City Sch. Dist. Bd. of Edu., 465 U.S. 75, 80 (1984).  In addition, we have no authority to review on appeal the decisions of the California state courts in the State Court Litigation.  "[T]he Rooker-Feldman doctrine provides that the United States Supreme Court is the only federal court that may review an issue previously determined or 'inextricably intertwined' with the previous action in state court between the

[8](...continued)
assert any argument in her opening brief (or in her reply brief either, for that matter) as to why the bankruptcy court erred in entering the July 30, 2012 Order.  "The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in the appellant's opening brief."  Miller v. Fairchild Indus., Inc., 797 F.2d 727, 737 (9th Cir. 1986).  Christian Legal Soc. v. Wu, 626 F.3d 483, 487-88 (9th Cir. 2010); Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 143 (9th Cir. BAP 1997).  Since Appellant does not make any argument asserting error with respect to the July 30, 2012 Order, any such argument is waived, and we do not consider the July 30, 2012 Order further.

-21-

same parties." Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 498 (9th Cir. BAP 2003). See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983); and Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923).

Appellant argues that all such orders "are void since [Ms. Kempton's] adversary proceeding precludes those state court decisions." Appellant's Opening Brief, at 23. We disagree. This Panel did conclude in In re Birting Fisheries, Inc., 300 B.R. at 498, that, "[w]hen a matter comes within the bankruptcy court's exclusive jurisdiction . . . general preclusion rules and the Rooker-Feldman doctrine do not apply." See, e.g., Kalb v. Feuerstein, 308 U.S. 433, 438-39 (1940) ("Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception . . . and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.").

However, when the bankruptcy court sent the State Court Litigation back to the California state courts for determination, it required Ms. Clark to defend the purely state law claims asserted by Ms. Kempton in her state court complaint for fraud, breach of contract and nondisclosure, nothing less, but nothing more. The bankruptcy court did not send the exception to discharge claims before it to state court, but retained its authority to adjudicate claims under § 523(a)(2) and (6) between the parties, if such claims remained to be decided after the State Court Litigation was concluded. In these circumstances, we simply have no authority to review the decisions reached by the

California state courts in the State Court Litigation in this appeal. We discuss the result in the State Court Litigation and its impact on the Adversary Proceeding in the next section of the Discussion.

D.   The Dismissal Order

Some clarification is in order as to what the Dismissal Order represents procedurally. Appellant characterizes the Dismissal Order as a "defacto" involuntary dismissal under Civil Rule 52(c), applicable in adversary proceedings in bankruptcy under Rule 7052, which applies to a judgment entered by the court in a nonjury trial, finding against a party on a claim after such party has been fully heard on a dispositive issue. See Appellant's Opening Brief, at 24. Since, as Appellant is painfully aware, no trial was held on her claims in the Adversary Proceeding, we suggest that it is more accurate to characterize the Dismissal Order as dismissing Appellant's claims on the pleadings under Civil Rule 12(c), applicable in adversary proceedings in bankruptcy under Rule 7012(b), for failure to state a claim upon which relief can be granted. However, since the bankruptcy court considered matters and evidence outside the pleadings from the parties' legal memoranda and declarations in arriving at its decision to dismiss the Adversary Proceeding, we consider the Dismissal Order as in the nature of a summary judgment under Civil Rule 56, applicable in adversary proceedings in bankruptcy under Rule 7056. Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1496 (9th Cir. 1995). In any event, as noted above, however we characterize the Dismissal Order, the applicable standard for our review is de novo.

-23-

Appellant argues that we should vacate the Dismissal Order and remand to the bankruptcy court for further proceedings because the Appellant "is entitled to have a trial in her [A]dversary [P]roceeding against [Ms.] Clark." Appellant's Opening Brief, at 24. We disagree for the following reasons.

We start our analysis by reviewing the statutory provisions on which Appellant relies to state her claims. Sections 523(a)(2)(A) and (a)(6) provide in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any <u>debt</u>–
>     (2) for money [or] property . . . to the extent obtained, by–
>         (A) false pretenses, a false representation, or actual fraud . . . ;
>     (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . . (Emphasis added.)

Accordingly, a condition precedent to pursuing a claim under § 523(a)(2)(A) or (a)(6) is that the debtor owe a "debt" to the claimant.

The term "debt" is defined in the Bankruptcy Code as a "liability on a claim," and in turn, a "claim" is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Sections 101(12) and 101(5), respectively.

Both terms are very broad, and the Supreme Court has held that they are coextensive. <u>See</u> <u>Pennsylvania Dept. of Public</u>

Welfare v. Davenport, 495 U.S. 552, 558 (1990). However, their compass is not limitless.

> We have said that "claim" has "the broadest available definition," Johnson v. Home State Bank, 501 U.S. 78, 83 . . . (1991), and have held that the "plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation" . . . .

FCC v. NextWave Personal Communications Inc., 537 U.S. 293, 302-03 (2003), quoting Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. at 559 (emphasis added). Appellant's fundamental problem in this appeal is that no enforceable obligation underlies the claims for relief she asserts in the Adversary Proceeding.

Ms. Kempton's allegations in the Adversary Proceeding complaint essentially overlay her claims asserted in the State Court Litigation with allegations addressing the elements of § 523(a)(2)(A) and (a)(6) claims. In the Case Management Order, the bankruptcy court stayed the Adversary Proceeding and lifted the automatic stay to allow the State Court Litigation to proceed to establish any debt owed by Ms. Clark to Ms. Kempton. In pleadings before the bankruptcy court in the Adversary Proceeding (see, e.g., Adversary Proceeding Docket No. 25, at 2 and 4; and Adversary Proceeding Docket No. 61, at 2) and in her opening brief in this appeal (see Appellant's Opening Brief, at 16), Ms. Kempton and Appellant have admitted that the California state court had concurrent jurisdiction with the bankruptcy court to determine the "debt" owed, if any, by Ms. Clark to Ms. Kempton.

The California state court ultimately dismissed the State Court Litigation based on Ms. Kempton's failure to satisfy the terms of the Security Order. The dismissal of the State Court

Litigation resulted from the application of a state law procedural requirement without a trial ever having occurred in California state court. However, the State Court Litigation Dismissal Order dismissed the State Court Litigation <u>with prejudice</u>, and the record reflects that no appeal ever was taken from that dismissal order. Accordingly, the dismissal of the State Court Litigation is final.

Under California law, a dismissal with prejudice, whether it is procedural or on the merits, has claim preclusive effect. <u>See</u> <u>Boeken v. Philip Morris USA, Inc.</u>, 48 Cal.4th 788, 809-810 (Cal. 2010) ("[F]or purposes of applying the doctrine of res judicata . . . a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action."; <u>Roybal v. Univ. Ford</u>, 207 Cal.App.3d 1080, 1086-87 (1989) ("The statutory term 'with prejudice' clearly means the plaintiff's right of action is terminated and may not be revived. . . . [A] dismissal with prejudice . . . bars any future action on the same subject matter.").

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." <u>Migra v. Warren City Sch. Dist. Bd. of Edu.</u>, 465 U.S. at 896, citing <u>Allen v. McCurry</u>, 449 U.S. 90, 96 (1980). <u>Gayden v. Nourbakhsh (In re Nourbakhsh)</u>, 67 F.3d 798, 801 (9th Cir. 1995); <u>In re Birting Fisheries, Inc.</u>, 300 B.R. at 497-98 ("Rules of federal and state comity establish that federal courts are required to give prior state court judgments the same preclusive effect as the state court that rendered the judgment."). The

Supreme Court has held that preclusion principles apply in exception to discharge actions in bankruptcy. See Grogan v. Garner, 498 U.S. 284-85 n.1 (1991); Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

The effect of a final California state court dismissal of the State Court Litigation with prejudice is that no enforceable obligation, i.e., no debt, is owed by Ms. Clark to Ms. Kempton. The condition precedent of such a debt for the Appellant to pursue the exception to discharge claims asserted in the Adversary Proceeding consequently cannot be satisfied, and we conclude as a matter of law, that the bankruptcy court did not err in dismissing the Adversary Proceeding.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the orders of the bankruptcy court appropriately before us in this appeal, including the Case Management Order and the Dismissal Order.